## Commonwealth v. Thurmond

Before Sweney, P. J., Toal, Diggins and Curran, JJ., and Gawthrop, P. J. (Chester County, Specially sitting).

*Arthur Levy,* for appellant.

*Ernest L. Green, Jr.,* and *John H. Clark, Jr.,* for Commonwealth.

DIGGINS, J., January 3, 1962.—This matter is before the court on appeal from summary conviction of defendant by a magistrate for violation of subsection D, sec. 903, art. IX, of The Vehicle Code of April 29, 1959, P. L. 58.

The record shows that on March 1, 1961, at about 8:15 p. m., defendant was operating a tractor and semi-trailer with a bulldozer thereon as burden at the intersection of Wanamaker Avenue and the Industrial Highway in Delaware County, when he was apprehended by a police officer of Tinicum Township and with the equipment (registered not in Pennsylvania, but in New Jersey) and load was taken to a weighing scale. At the scale, the tractor and semi-trailer operated by defendant were weighed by the officer and found to have a total weight of 77,800 pounds, which weight is alleged to be 27,800 pounds more than permitted by The Vehicle Code for this type of tractor and semi-trailer.

Immediately after the weighing, the officer took defendant to the office of the justice of the peace, where at a hearing defendant entered a plea of guilty to violation of the overweight provisions of The Vehicle Code. A fine of $2,750 and costs of $5 were imposed upon defendant.

In the appeal, defendant contends that the Commonwealth failed to prove its case beyond a reasonable doubt because it failed to offer evidence showing that the scale was accurate at the time it was used to weigh defendant's vehicle. The Commonwealth contends that it is not necessary that it produce evidence of the accuracy of the scale in absence of challenge.

After argument before the court en banc and presentation of briefs, the four judges of the Court of Quarter Sessions of Delaware County divided evenly on the basic question involved in this appeal, i. e., must the Commonwealth prove the accuracy of the scales as part of its burden, and the Supreme Court of Pennsylvania, upon application by the president judge of this court, appointed the Honorable Thomas C. Gawthrop, President Judge of the Courts of Chester County, to sit with the Court of Quarter Sessions of

Delaware County en banc. Thereafter, all counsel were notified of the situation and reargument had before the five judges on November 29, 1961. Additional copies of briefs for the use of the additional judge were submitted and the matter is now ready for adjudication.

From the record, we make the following

## Findings of Fact

1. On March 1, 1961, at about 8:15 p. m., defendant, Anderson J. Thurmond, operated a tractor and lowbed semi-trailer combination at Wanamaker Avenue and the Industrial Highway, Tinicum Township, Delaware County, Pennsylvania.

2. The trailer carried a bulldozer as cargo.

3. The trailer had eight wheels at the rear, all of which were parallel and the front end of the trailer was carried on the bed of the tractor.

4. All eight wheels are mounted side by side on an axle, the axle being divided in the center to permit the trailer to negotiate curves (so that four wheels on the outside at a given curve can travel faster that four wheels on the inside, thereby preventing slipping and dragging around the curve.)

5. The equipment, so burdened, was operated on the highways of the Commonwealth at Wanamaker Avenue and the Industrial Highway in Delaware County.

6. After apprehension, the officer making the arrest weighed defendant's tractor, trailer and cargo and determined the total weight as 77,800 pounds.

7. Thereafter, defendant driver was taken before Magistrate Messerick of Tinicum Township and charged with violating section 903(d) of The Vehicle Code which provides:

"Whenever two (2) vehicles are used or operated as a combination on any highway, the gross weight of the combination shall not exceed the sum of the maximum gross weights allowed for the respective vehicles

and, in addition, the gross weight of the combination shall not exceed the gross weight specified as follows:

Truck tractor and single-axle semi-trailer 50,000"

8. The magistrate found that defendant's vehicle and load exceeded the maximum weight limitation prescribed by section 903(d) of The Vehicle Code, 75 PS §903 by 27,800 pounds, and levied a fine of $2,750 and costs in the amount of $5 were imposed upon defendant driver.

## Discussion

Defendant raises two principle questions in this appeal, the first and basic contention being that the failure of the Commonwealth to prove the accuracy of the scales is fatal, and secondly, that the semi-trailer in question is a two-axle vehicle and therefore is permitted a maximum weight limitation by section 903 (d) of The Vehicle Code of 60,000 pounds, in which event the overload alleged here would sustain a fine of only $1,750.

The court did not divide on this point and is still unanimous in holding that this is a single-axle semi-trailer, the reasoning being that all wheels are side by side, and the axle is in a straight line from one side to the other, divided in the middle merely for operating convenience, and further it is to be noted that section 903 (g) of The Vehicle Code provides that

"(g) No vehicle with four (4) or more wheels shall be operated upon any highway unless any two (2) axles be at least thirty-six inches apart . . . "

While, of course, section 903(g) does not designate the type of axle which we are dealing with, a single axle per se, it does indicate the reasoning of the legislature which is to recognize the fact that much greater force is exerted in a concentrated area by the weight on a single axle, thereby doing greater damage to the highways than if the same load is spread over two axles at least 36 inches apart.

As yet, there has been no appellate case in Pennsylvania where this type of axle has been the subject of definition although many cases involving overweight on vehicles of this type have been before the courts. The question, however, did arise under a similar statute in the State of Virginia in Tiller v. Commonwealth, 193 Va. 418, 69 S. E. 2d 441. In that case, the axle construction was the same as in the present case and the court was asked to decide how many axles the truck had within the meaning of the Virginia Code (identical with Pennsylvania's), defendant contending that since the rear wheels on each side were attached to separate shafts, there were two axles under the rear of the truck. The Virginia court said:

"In construing a statute the cardinal rule of construction is that the intention of the legislature constitutes the law, and the primary object in the interpretation of a statute is to ascertain that intention." And the Virginia court held that since the Virginia code, like the Pennsylvania code, section 903 (g), provides that no two axles shall lie in the same vertical plane, nor shall the axle spacing be less than 40 inches from center to center, (in Pennsylvania, it is 36 inches), and went on to say:

"The meaning of this sentence is clear and unambiguous. Any number of axles in the same vertical plane or any number of axles spaced less than forty inches [36 inches in Pennsylvania] apart is to be considered as a single axle in computing the gross weight transmitted to the road surface through such axles. Even if the defendant's definition of 'axle' were adopted, the effect of the statute would be the same because the two axles, as defined by him, being in the same vertical plane would still be considered as one axle within the expressed language of the statute. We must conclude that the defendant's position on this question is without merit."

And it is significant to note that in Virginia they were dealing with what is known as the full-floating type axle which is one containing a differential housing whereas in the present case there is no differential housing in this axle.

In Pennsylvania, as in Virginia, it is the law that when a penal statute is involved, the legislative intention is in most cases to be found by giving to the words the meaning they are given in ordinary speech. True, penal statutes are to be strictly construed, yet the Superior Court of Pennsylvania, in Commonwealth v. DeWan, 181 Pa. Superior Ct. 203, said:

" . . . In absence of legislative definitions, meaning of words are ascribed their ordinary definitions."

Therefore, this court is unanimously of the opinion that this is a single axle semi-trailer subject to the weight limitations of 50,000 pounds as prescribed in section 903 (d) of The Vehicle Code.

The basic question involved is whether or not the Commonwealth was obliged to prove the accuracy of the scale at the time defendant's equipment and load was weighed. The majority view answers this question in the negative. We can find no appellate decision on the question in Pennsylvania. There are, however, decisions directly in point in other states. In New York, there is no doubt that the law requires the prosecution to submit proof of the accuracy of the scales in order to meet its burden. This rule is laid down by the State of New York in People v. Vadakin, 125 N. Y. S. 2d 25 (1953), and also in People v. DuShane, 125 N. Y. S. 2d 9 (1953), whereas in New Jersey the opposite result on the same question is reached by the appellate court. In State v. Rogers and Sheldon Inc., 16 N. J. Super. 80, 83 A. 2d 826, the New Jersey Superior Court said:

"The defendant argued that the scales were or might have been inaccurate at the time the weighing took

place. The testimony does not indicate that the scales were inaccurate."—the court taking the position in New Jersey that the weight is to be considered accurate unless the accuracy of the scales is challenged. There was, of course, no challenge made in the present case.

Counsel for the Commonwealth argues that there may be good and sufficient reason not applicable in the Pennsylvania statute to justify the New York view, because in New York the statute makes defendant in overweight cases subject to jail which is not so in Pennsylvania, and this element may have impelled the court to require the State to prove the accuracy of the scale, and further, the law of New York, as expressed in the New York Weights and Measures Law, McKinney's Consolidated Laws of New York Ann., Title 2b, §182, requires that such scales be checked twice a year or oftener, if necessary, by the county sealer of weights and measures, whereas in Pennsylvania, the act governing the county sealer of weights and measures does not require the checking for accuracy of municipally owned scales not used in buying or selling goods, wares or merchandise.

The weighing of this vehicle and load by the police officer was an official act or duty and under the law in Pennsylvania.

"Official acts or duties are, *in the absence of evidence to the contrary*, presumed to have been properly performed; and, as a general rule, it is presumed that a public official discharges his duty or performs an act required by law in accordance with the law and the authority conferred upon him, and that he acts fairly, impartially, and in good faith:" Brown, Pennsylvania Evidence, page 36, citing Vernon Township v. United Natural Gas Co., 256 Pa. 435. (Italics supplied.)

It is not contended that this officer did not perform his duty properly and behind that duty stands the

common experience of mankind that evidence produced by devices manufactured for official tests of weight, volume, speed and time are accepted unless and until contradicted.

"Like other instruments, a weight certificate may be attacked on the ground of fraud or mistake. It is true that the legislature has the right to give to the act of the weighmaster a high character as evidence, and to provide that such act can be impeached only when the party complaining or the party under whom he claims was himself free from fault or negligence, and when it is demonstrated by clear, strong, and satisfactory evidence that there was in fact a substantial mistake in the weighing. There is, however, a tendency to interpret legislation relating to weighmasters' certificates in such a manner as *not to give such certificates a conclusive effect as evidence of the* weight of the commodity." 56 Am. Jur., Weights, Measures and Labels, §32. (Italics supplied.)

In the present case, the weighmaster, under section 904, is the peace officer. We do not hold that his finding is entitled to conclusive weight, but we do hold that when uncontradicted, it is entitled to weight. Defendant here contends that under such circumstances, it is entitled to no weight whatever.

"To establish the allegation of shortage in weight [with regard to short weight statutes], the insufficiency of the weight need not be proved by the testimony of an official weighmaster or inspector, but it may be established by any competent evidence:" (C. J. S. Weights and Measures, §12). See Commonwealth v. Cohen, 103 Pa. Superior Ct. 496.

It is true that this scale bore a seal of the county sealer of weights and measures which was surplusage here, because the act governing such sealing applies only to scales used in Pennsylvania in selling goods,

wares and merchandise. The Vehicle Code under which this prosecution is brought provides that the officer ". . . is authorized to weigh the same, either by means of portable or stationery scales, or may require that such vehicle or combination of vehicles or tractor be driven to the nearest stationary scales in the event such scales are within a distance of two (2) miles:" 75 PS §904.

It is not without significance that in The Vehicle Code some four measuring devices are covered: radar, speedometers, stop watches, scales. Under that part of The Vehicle Code governing prosecutions based on radar, the radar equipment must be periodically checked and proof thereof necessarily introduced in the Commonwealth's case. The same is true of speedometers. However, in the same code, where the use of timing devices such as stop watches are used over measured courses, there is no provision that the timing device be periodically checked, nor is there any requirement that proof of accuracy is a prerequisite in the Commonwealth's case. Exactly the same is true regarding the overload provision of the code and the weighing scales.

It is unreasonable to suppose that the legislature, in specifically requiring proof of accuracy of radar and speedometers, intended to require proof of accuracy of the other two measuring devices, that is, watches and scales. Further, it is significant to note that where the legislature did require proof of accuracy, it specifically provided the extent of such proof. That not being so in relation to scales, where do accuracy tests stop? If one brought in a scale expert who stated that by instruments he had checked the scales and found them accurate, the next question would be, "Who checked his instruments and were they accurate?" and so on ad infinitum. Where the measured quarter mile is involved in traffic violations, no one ever asks if the

yardstick used in measuring the quarter mile was accurate and the Commonwealth has never been required to prove that it was. If, therefore, the legislature saw fit to require proof of accuracy where radar and speedometer readings are involved, and failed to do so where scales or other devices are involved, and this court were to require such proof of accuracy, it would be legislating in its purest sense and not interpreting statutes as is the duty of a court.

It has been advanced by defendant here that since the scales are peculiarly in the control of the Commonwealth, he would not have access to check their accuracy. Without conceding this, we point out, however, that he does have control of his equipment and load, and he can weigh the same before committing it to the highways of the Commonwealth, and in this particular instance, since the entire equipment and load consisted of three pieces of mechanical units, to wit, the semitrailer, the tractor and the bulldozer carried, it is quite likely that the driver of this equipment knew the total weight of these three pieces and by introducing them in evidence could have challenged the accuracy of the weight certificate. His failure to do this or to have his own weight certificate seems to us an indication that he knew the truck was overweight. His plea of guilty bears in this direction, although we recognize that the entry of the plea does not make the case res judicata in this appeal where it is de novo on the merits, but under all the authorities in Pennsylvania, the fact that the plea has been entered is evidence; nor are we unmindful of the fact that defendant contends that he did not have to affirmatively challenge the accuracy of the scales, that it was the burden of the Commonwealth to prove this in the first instance. Therefore, we suggest the foregoing in answer to the contention that the challenge need not be made because the weighing scales were in the exclusive control of the Commonwealth.

It is further to be noted that The Vehicle Code does not absolutely banish overloads from the highway, but recognizes that under certain conditions overloads, in the interest of progress in industry and commerce, must be allowed, and where one faces the necessity of moving an unusually heavy article over the highways, all one need do is apply to the Bureau of Motor Vehicles and if the request is reasonable, a permit will be issued permitting the move. It may well be that in the present case, if defendant had applied for such permit, it might have been granted. On the other hand, it might just as well be that if application had been made, The Vehicle Department might have required the use of a two-axle trailer, thereby obtaining better distribution of the load bearing on the highway surface.

The basic question in this case, however, is not entirely new in this county. The same question and the same argument as presented here were before this court in the case of Commonwealth v. Wall, 45 Del. Co. 136 (1958), which held:

"Counsel for the defendant argues strenuously that the portable scales, known as 'Loadometers', are not accurate and that the appeals in these cases should be sustained. We are not impressed with this argument; portable scales may be used in accordance with the Act of Assembly. In addition, *there is no proof before us that the scales used by the State Police in these cases were not accurate or needed adjustment.*" (Italics supplied.)

A similar question was raised in Montour County in the case of Commonwealth v. Olshefski, 64 D. & C. 343. In that case, defendant was driving a truck loaded with coal and was stopped by a State policeman, taken to a scale where the load was weighed by the officer, who was given a weigh slip by the weighmaster. Based upon this, the officer brought prosecution under The Vehicle Code charging overweight. The counsel for de-

fendant contended that defendant could not be found guilty because the load was not weighed by a licensed weighmaster. This was disposed of by the court on the fact that The Vehicle Code does not require a truck to be weighed by a licensed weighmaster but permits any police officer in uniform to do so, and further held that the evidence presented by the Commonwealth was sufficient. There was no requirement that the accuracy of the scales be proved.

It is to be noted that in the case of Commonwealth v. Parrish, 138 Pa. Superior Ct. 593, 10 A. 2d 896 (1940), which was a case arising under section 1002 of The Vehicle Code having to do with speed violations based on speedometer readings, at the time the decision was rendered, section 1002 did not permit use of a certificate of speed as evidence, but at a time when the code did require proof of inspection of the speedometer within 30 days. The court, however, had this to say:

" . . . The Commonwealth made out a prima facie case through the arresting officer who testified that he was present and observed the test as it was made, and by his further testimony that he followed the defendant on the highway for more than one quarter of a mile and, from a reading of his speedometer, determined that the defendant was driving his car at a speed in excess of the legal limit . . . "

There was no burden on the Commonwealth of proving the accuracy of the officer's speedometer except by competent proof that "it had been 'tested for accuracy within a period of thirty days prior to the alleged violation' ", pointing up what is here contended, that a commonly accepted measuring device may be the basis of prima facie evidence unless and only to the extent that the legislature has required some prior testing, none of which has been applied by the legislature to weighing scales.

As a further indication that the legislature did not overlook the question of accuracy of the weighing scale, it provided a tolerance in favor of defendant of three percent: Penalty Clause, The Vehicle Code, 75 PS §903. It could have provided, just as readily as it did in the case of radar and speedometers, that accuracy tests be periodically made, in which event no tolerance would have been necessary. The legislature, however, chose the tolerance method in relation to scales.

If this court were to hold that the accuracy of the scale must be proved by the Commonwealth in its case in chief, it would effectively destroy the overweight statute until such time as the legislature saw fit to act, because the court could not and should not state the manner in which the accuracy check of the scales should be made or the time within which it should be made. This is obviously for the legislature and is an essential and integral part of any such law and all of it properly lies exclusively with the legislature, and indeed we think the legislature dealt with it when it provided the tolerance factor in lieu of accuracy tests.

These overweight cases have been before the courts innumerable times in Pennsylvania and no one has yet challenged the right of the Commonwealth to rest its case on the prima facie evidence of the weighing officer. No presumption is involved here. It is merely a question of whether or not the officer's testimony and his certificate of weight is prima facie evidence of overload until and unless challenged, in which event the question becomes one of fact for the court to decide. We hold that such testimony is prima facie evidence until and unless the legislature requires some check thereon. We are of the opinion that legal readings based upon radar, speedometers, stop watch and scales would all be such prima facie evidence and the only reason radar and speedometer readings are not so classified is because the legislature has placed limi-

tations thereon, which limitations it has not placed on stopwatches and scales.

The large number of appeals taken from overweight cases are inspired by the extent of the fine provided, and it is urged that the penalty, being financially severe, is to be considered by this court in determining the Commonwealth's burden. We do not think this reasoning has any application, and in any event, we recognize the fact that unless the fine is made adequate, motor vehicle operators would find it more profitable to violate and pay the fine if caught than to use different or more equipment in making the movement. In the present case, the overload exceeded 13 tons. It is not difficult to see that the motor freight rate per ton mile here involved is considerable and it takes a substantial fine to deter such motor vehicle drivers.

Therefore, we make the following

### Conclusions of Law

1. The tractor and low-bed semi-trailer combination, driven by the defendant on the highways of Delaware County, Pennsylvania, was a single-axle vehicle and subject to the provisions of section 903 (d) of The Vehicle Code, 75 PS §903, which limited the gross weight of the combined equipment to 50,000 pounds.

2. The equipment operated by defendant exceeded the legal weight limit by 27,800 pounds.

3. The Commonwealth met its burden when the arresting officer testified that he weighed defendant's tractor, trailer and load upon the scale and found the total weight to be 77,800 pounds.

Therefore, we make the following

### Order

And now, January 3, 1962, it is ordered and decreed that the appeal of Anderson J. Thurmond be and the

same is hereby dismissed; the said Anderson J. Thurmond is found guilty and is hereby sentenced to pay a fine of $2,750 and costs of prosecution; and an exception is allowed defendant.

## Dissenting Opinion

TOAL and CURRAN, JJ., January 10, 1962.—It is the opinion of the minority of this court that when the Commonwealth failed to produce evidence that the scales were accurate it failed to prove its case beyond a reasonable doubt. Since the basic element in an overweight case is the weight itself, the weight alleged must be proven beyond a reasonable doubt. In order to meet this burden it is the minority's opinion that the Commonwealth must show that the weight was obtained on an accurate scale. As was said by the court of our sister state, New York, in People v. DuShane, 125 N. Y. S. 2d 9: "It is elementary that before testimony as to what weight was obtained from a scale or from any other instrument, that there must first be introduced proof of the accuracy of the scales or the instrument". See also People v. Vadakin, 125 N. Y. S. 2d 25; People v. Brandon, 165 N. Y. S. 2d 640; People v. Hazelton, 169 N. Y. S. 2d 490.

Since the Commonwealth failed to produce competent evidence that the scales used to weigh the tractor trailer were accurate, there are only two ways to establish the accuracy of the scales and still meet the burden of proving a case beyond the reasonable doubt. One method would be by a presumption of accuracy and the other would be by the court taking judicial notice that the scales of the type used are customarily accurate. The Commonwealth, in order to have the advantage of the presumption, must point to some authority in law which raises such a presumption. The minority knows of no such presumption that exists in

this Commonwealth. In cases where the speed of a vehicle is measured by a speedometer in an officer's car or by radar, the presumption that the speedometer or the radar is accurate is established by special provisions enacted by the legislature. However, the legislature has not created any such presumption in the case of scales. It is the opinion of the minority that the legislature recognized the fallibility of mechanical measuring devices and, by legislative fiat in the two above mentioned instances, relaxed the requirement that the Commonwealth prove that part of its case beyond a reasonable doubt provided it showed in its case in chief that it had complied with the statutory provisions set up by the legislature as a standard. Where the legislature has failed to create a standard, the Commonwealth must prove its case completely beyond a reasonable doubt and is required to do so by credible evidence.

For a court to take judicial notice of something without competent proof thereof, the subject under consideration must be one of general notoriety, immemorial usage or of uniform national occurrence. To hold that this particular weighing device falls within the above mentioned categories is impossible, especially where the evidence concerning the scale itself is as scant as it is here.

The majority opinion in the case at bar holds that the Commonwealth is not required to prove accuracy of the measuring device in its case in chief and that, where accuracy is challenged, it is incumbent upon defendant to raise the issue as an affirmative defense. The record shows that the scales in question were at all times under the control of the Commonwealth and its agents. Defendant had no opportunity to test the accuracy of the scales in question.

We are not here concerned only with the actual guilt or innocence of the particular defendant. We are con-

cerned with the vital and fundamental principle of law which in the opinion of the minority is being ignored by the majority, i.e., that the Commonwealth must prove its case in its entirety by evidence beyond a reasonable doubt. The failure of the Commonwealth to establish accuracy of the scales in question in its case in chief was challenged by defendant at the hearing and the point having been raised, we of the minority believe that the Commonwealth should be required to prove the accuracy of the scales in question by credible evidence.

We therefore would find the defendant not guilty.