# Richmond

## CURTIS ELMER TILLER v. COMMONWEALTH OF VIRGINIA.

March 10, 1952.

Record No. 3915.

Present, All the Justices.

The opinion states the case.

*B. F. Sutherland* and *S. H. & Geo. C. Sutherland*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General, D. Gardiner Tyler, Jr., Assistant Attorney General* and *H. Coleman McGehee, Jr.*, for the Commonwealth.

SMITH J., delivered the opinion of the court.

The plaintiff in error, Curtis Elmer Tiller, hereinafter referred to as the defendant, was convicted by the trial justice of Dickenson county of operating an overloaded motor vehicle in violation of section 46-334 of the Code of Virginia, 1950.[1] The defendant appealed to the Circuit Court of Dickenson county where the case was tried *de novo* before the judge without a jury. He was again convicted and to that judgment he has obtained a writ of error.

It is stipulated and agreed between the parties that the defendant was operating the White truck in question on a State highway in Dickenson county and that the truck with its load had a gross weight of 26,600 pounds. The combined weight on both front wheels was 5,900 pounds and the combined weight on both rear dual wheels was 20,700 pounds.

---

[1] "§ 46-334. Weight of vehicles and loads.—The maximum gross weight to be permitted on the road surface through any axle of any vehicle shall not exceed sixteen thousand pounds, nor shall it exceed six hundred and fifty pounds per inch, width of tire, measured in contact with the surface of the highway. The gross weight, including the weight of the vehicle and the maximum load, of any four wheel vehicle shall not exceed twenty-four thousand pounds and the gross weight of any six wheel vehicle or any combination of vehicles shall not exceed thirty-five thousand pounds. In determining the number of wheels, dual wheels shall be counted as two wheels. No two axles shall lie in the same vertical plane, nor shall the axle spacing be less than forty inches from center to center. The axle arrangements shall be such that the proportion of the gross load carried on any axle shall remain constant. (1932 p. 668; 1942, p. 556; Michie Code 1942, § 2154(160).)"

The defendant claims that the trial court erred in its judgment because the evidence fails to show that the gross weight of the truck exceeded 35,000 pounds and since, as he contends, the truck was a six wheel vehicle there was no violation of the statute. Furthermore, he claims that the evidence does not show that there was more than 16,000 pounds of weight transmitted through any axle. He also contends that section 46-334 of the Code is unconstitutional and void because it violates the Constitution of the United States, Amend. XIV, § 1.

The defendant's objections arise from the fact that his definitions of certain words appearing in Code section 46-334 differ from the definitions of those same words by the Commonwealth. When the legislature framed this statute, it had in mind a particular definition for each word used and it is our function to interpret the meaning of the words in controversy as intended by the legislature. Unless there is ambiguity in a statute, there is no need for interpretation, for the province of construction lies wholly within the domain of ambiguity. *Cason* v. *Commonwealth,* 181 Va. 297, 24 S. E. (2d) 435; *Hammer* v. *Commonwealth,* 169 Va. 355, 193 S. E. 496.

The first question for decision is, how many axles did the truck have within the meaning of Code section 46-334? The defendant contends that since the rear wheels on each side are attached to separate shafts, there are two axles under the rear of the truck. If this is the correct meaning of "axle", the defendant has not violated the statutory provision limiting the maximum gross weight on the road surface through any axle to 16,000 pounds.

In construing a statute the cardinal rule of construction is that the intention of the legislature constitutes the law, and the primary object in the interpretaion of a statute is to ascertain that intention. *Anglin* v. *Joyner,* 181 Va. 660, 26 S. E. (2d) 58. When a penal statute is involved, the legislative intent is, in most cases, to be found by giving to the words the meaning in which they are used in ordinary speech. *Gates & Son Co.* v. *Richmond,* 103 Va. 702, 49 S. E. 965.

The construction and maintenance of highways in this State involves the expenditure of vast sums of money and it is obvious that the purpose of the legislature in enacting the statute herein involved was to prevent injury to roads and bridges and to promote the safety of persons traveling over the highways by

prohibiting the use on the public highways of vehicles of excessive weight. One of the primary means to achieve this result has been the enactment of legislation to regulate and control the size and weight of vehicles using the highways, and Code section 46-334 is a part of this legislative scheme.

Webster's New International Dictionary (2d ed. 1951) defines "axle" as follows: "1. The pin or spindle on which a wheel revolves, or which revolves with a wheel. A dead axle carries road *wheels* but has no provision for driving them. A live axle carries weight and furnishes means through which driving power is transmitted to the *wheels*. The weight-carrying member is usually a hollow housing and the propelling *members* are *concentric axle shafts* carried in it. A plain live axle carries both differential and road *wheels*. * * *In a full-floating axle the *wheels* are supported on the housing, which carries two bearings on which the *wheels* revolve. * * *" (Italics supplied).

The defendant's White truck was equipped with a single reduction, full floating rear axle.

█ It is plain from Webster's definition that "axle" in its ordinary sense and acceptation means the assembly of housing and axle shafts which support and propel the wheels. The definition repeatedly refers to *wheels* (plural) and to the weight-carrying member and propelling members (plural), or *concentric axle shafts*. What the defendant defines as "axle" is what the dictionary refers to as "shaft" and that is only a part of the entire assembly embraced within the word "axle" as defined above.

Any other definition would do violence to the obvious intention of the legislature to limit the weight of vehicles using the public highways. If the defendant's definition were applied, the ordinary four wheel motor vehicle with a conventional rear-end assembly could lawfully carry a gross weight on the rear of 32,000 pounds (16,000 pounds per "axle"), whereas the statute itself limits the gross weight of four wheel vehicles to 24,000 pounds.

Any doubt on this point is immediately dispelled by that part of the statute which says that "No two axles shall lie in the same vertical plane, nor shall the spacing be less than forty inches from center to center." The meaning of this sentence is clear and unambiguous. Any number of axles in the same vertical plane or any number of axles spaced less than forty inches apart

is to be considered as a *single axle* in computing the gross weight transmitted to the road surface through such axles. Even if the defendant's definition of "axle" were adopted, the effect of the statute would be the same because the two axles, as defined by him, being in the same vertical plane would still be considered as one axle within the expressed language of the statute. We must conclude that the defendant's position on this question is without merit.

The second question for decision is, how many wheels did the truck have within the meaning of Code section 46-334? The truck which the defendant was driving was equipped with a pair of single wheels in the front and a pair of dual wheels in the rear. The defendant contends that each dual wheel is made up of two wheels, therefore, the truck had six wheels within the meaning of the statute.

The gross weight of a vehicle is limited by Code section 46-334 in accordance with the number of wheels supporting the vehicle. The gross weight of a four wheel vehicle is limited to 24,000 pounds and the gross weight of a six wheel vehicle is limited to 35,000 pounds. The basis for this classification is clear. A six wheel vehicle will distribute its load over a larger area of the highway than will a four wheel vehicle, therefore, the six-wheeler can carry a larger gross weight than a four-wheeler without increasing the stress and strain on the surface of the road. This is a fact of which the legislature was well aware and that is why the statute provides that "In determining the number of wheels, dual wheels shall be counted as two wheels." The words "dual wheel" denote one wheel unit made up of two separate wheels which are so assembled, supported, and propelled as to act as one wheel. This method of construction permits a larger tire area in contact with the road surface without resorting to a single tire of such a large size, which would probably not be mechanically feasible. In this connection the statute also provides. "nor shall it [maximum gross weight] exceed six hundred and fifty pounds per inch, width of tire, measured in contact wtih the surface of the highway." In using the words "dual wheels" the legislature meant more than one "dual wheel" and it is specifically provided that "dual wheels shall be counted as two wheels."

If each dual wheel of the truck herein involved is treated as two wheels, making a total of six wheels, the maximum gross

weight would be 35,000 pounds. Since this truck has only two axles, there is no way that the 35,000 pounds could be distributed without assigning more than 16,000 pounds (the legal maximum) to one of the axles. If this truck is treated as a four wheel vehicle, as we hold that it is, the maximum gross weight would be 24,000 pounds, which could be distributed in many different ways so that neither the front nor the rear axle would carry in excess of 16,000 pounds.

If the legislature had intended that each dual wheel be counted as two wheels, it would have used the words "dual wheel" (singular) in its definition instead of "dual wheels" (plural).

Finally, there is the question of the constitutionality of Code section 46-334. The defendant contends that this section is so vague and uncertain or so conflicting and inconsistent that the intent of the legislature cannot be plainly understood and that it is, therefore, void.

It is not necessary to cite authority to support the statement that one of the strongest presumptions of the law is raised in favor of the constitutionality of a statute and a legislative enactment will never be declared unconstitutional unless it is clearly and plainly so.

The rule that a penal statute must be strictly construed does not prevent consideration by the courts of the general purpose and design of the legislature. *Donnelley* v. *United States,* 276 U. S. 505, 48 S. Ct. 400, 72 L. ed. 676. We have already noted that the statute herein involved relates to the public safety and to this extent it may be construed as remedial as well as penal and it is the judicial function to search for and follow the true legislative intent and adopt that sense of the words used which will attain the results anticipated by the legislature, being careful, however, not to enlarge by implication the obvious effect of the statute. *Illinois Central R. Co.* v. *Hudson,* 136 Tenn. (9 Thomp.) 1, 188 S. W. 589, 2 A. L. R. 147 .

Studied in the light of its purpose and the intent of the legislature, the meaning of Code section 46-334 is not so ambiguous as to leave reasonable doubt of its meaning, nor are its words equally capable of more than one construction. Any other meaning of "axle" and "wheel" as used in the statute, opposed to the construction herein pronounced, would be contrary to the express language used and the manifest intent of the

legislature, would render the statute unreasonable, and would lead to an utter absurdity which cannot be presumed to have been the intent of the legislature.

Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*