COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Fitzpatrick and Annunziata
Argued at Alexandria, Virginia


RICHARD F. MORENO
                                              OPINION BY
v.        Record No. 0972-96-4    JUDGE JOHANNA L. FITZPATRICK
                                           FEBRUARY 11, 1997
PATRICIA E. MORENO


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Dennis J. Smith, Judge

         Alan M. Winterhalter (Alan M. Winterhalter &
         Associates, P.C., on brief), for appellant.

         (Carl P. Horton, on brief), for appellee.
         Appellee submitting on brief.


     Richard F. Moreno (husband) appeals the decision of the

trial court denying a request to terminate his spousal support

obligation to Patricia E. Moreno (wife).  He contends that the

trial court erred in using income from his previously divided

government pension as a source of funds to pay spousal support.

Finding no error, we affirm the judgment of the trial court.

                      **I.  BACKGROUND**

     The facts of this case are not in dispute.  The parties were

married in 1970, separated in 1990, and divorced in 1992.  The

final decree of divorce, entered June 15, 1992, incorporated the

parties' property settlement agreement (Agreement).  Included in

the Agreement were provisions requiring husband to pay spousal

support and provisions distributing the marital portions of

husband's pensions.[1]
_____
     [1]The final decree of divorce "ratified, adopted and

incorporated" the parties' Agreement, and provides in pertinent part as follows:

       3 B. (1)  The Husband agrees to pay to the Wife, for her support and maintenance, Two Thousand Six Hundred Dollars ($2,600) per month . . . .

       3 B. (2)  The obligation of the Husband to pay spousal support to the Wife shall terminate on the first to occur of:  (a) the death of the Husband; (b) the death of the Wife; (c) remarriage of the Wife; or (d) the Wife living with a man to whom she is not married for a period in excess of 6 months, as though they were husband and wife.

       3 C. (1)  In the event that the Husband's income shall be reduced for reasons which are not wholly within the control of the Husband, the Wife agrees to consider proposals of the Husband for modification to the foregoing spousal support provisions.  The Husband agrees that any such proposals made to the Wife will be made in good faith and only when any such reduction in income has a deleterious effect on his ability to make the payments required by this Agreement and his ability to support himself in a manner consistent with his standard [of] living prior to such income reduction.

       3 C. (2)  The Husband agrees that if the house is not sold prior to his actual date of retirement, he will not ask a court of competent jurisdiction to reduce or eliminate spousal support if the sole basis for the reduction or elimination of the support payments is his retirement.

       3 C. (3)  The parties agree that they shall have the right to petition a court of competent jurisdiction to modify or eliminate the foregoing support and maintenance in accordance with any statutory provision or Rule of court then in force.

       \*     \*     \*     \*     \*     \*     \*

2

Eighteen months prior to husband's mandatory retirement age of sixty years, husband voluntarily retired and received a $25,000 buy-out from his employer. At the time of his retirement, husband was living in Thailand and was a career employee of the United States government. He has since remarried, become a permanent resident of Thailand, but is prohibited by law from working in that country. Upon his retirement, husband's employer began making the pension payments as required by the Agreement.

On October 13, 1995, more than a year after his retirement, husband filed a motion to terminate spousal support. The trial court heard the motion on March 20, 1996. Husband argued that the only income source for making his spousal support payments since his retirement was his pension income and interest earned from savings. Additionally, he argued that because he could not

---

11 D. (1)  The Wife shall be entitled to, and receive, fifty per cent (50%) of the marital share of the Husband's military pension, when, as and if he receives said pension, based on years married (calculated up to the date of separation), during which Husband accrued a portion of his pension, over total years in military service (including Reserves) during which Husband accrued his total pension benefit.

11 D. (2)  The Wife shall be entitled to, and receive, her maximum pension benefit allowable under Virginia and federal law, fifty per cent (50%) of the marital share of Husband's civil (U.S. Government) pension, when, as and if he receives said pension.

3

lawfully work in Thailand, he was unable to earn any supplemental income and none could be imputed to him. He admitted that when he reached age sixty shortly after trial, he would begin to receive an additional pension from the U.S. Army, which also would be divided pursuant to the provisions of the Agreement.

Wife testified that her need for spousal support had not diminished. Her income was limited to her salary, the spousal support paid by the husband of $2,600 per month, and her share of the husband's pension. Wife further testified that her expenses included the mortgage payments she paid on the parties' former marital home, upkeep of the home, medical care for herself and her daughter, as well as financial support for her daughter. The court denied wife's motion to require husband to pay a portion of the mortgage payment if it terminated spousal support, finding that it "had no power to modify this provision of the PSA."

At the conclusion of the hearing, the court found as follows:

> [B]oth parties' testimony was credible[,]
> . . . the [husband] did not retire earlier
> than his mandatory retirement age for an
> improper purpose. . . . [T]he [husband's]
> retirement from government service did not
> preclude his earning income from other
> sources. . . . [T]he [husband] . . . chose[]
> to settle abroad in a country where the cost
> of living is substantially lower.

The court additionally found that husband "voluntarily chose to stay in Thailand and, accordingly, retired in a place which did not allow him to work[,] . . . thus preclud[ing] the [c]ourt from

4

imputing income to him."  The court denied husband's motion to terminate spousal support, but found that "there had been a change in circumstances to warrant a reduction in the spousal support from $2,600 per month to [$800] per month, beginning April 1, 1996.  The [c]ourt determined the amount of the award based on the testimony as to the approximate split of the [husband's] Army pension and the other evidence."[2]

## II.  STANDARD OF REVIEW

"Whether spousal support should be paid is largely a matter committed to the sound discretion of the trial court, subject to the provisions of Code § 20-107.1."  McGuire v. McGuire, 10 Va. App. 248, 251, 391 S.E.2d 344, 346 (1990).  Although the decision to award spousal support rests within the trial court's discretion, "'such discretion is not absolute and is subject to review for abuse.'"  L.C.S. v. S.A.S., 19 Va. App. 709, 714, 453 S.E.2d 580, 583 (1995) (quoting Via v. Via, 14 Va. App. 868, 870, 419 S.E.2d 431, 433 (1992)).

> In fixing the amount of the spousal support award, . . . the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion.  We will reverse the trial court only when its decision is plainly wrong or without evidence to support it.

Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992) (citations omitted).

---

[2]The record in this case included a "statement of facts, testimony and other incidents of the case."

5

"Upon petition of either party, a court may . . . [modify] . . . spousal support . . . as the circumstances may make proper."  See Code § 20-109.  "The moving party in a petition for modification of support is required to prove both a material change in circumstances and that this change warrants a modification of support."  Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989); Furr v. Furr, 13 Va. App. 479, 481, 413 S.E.2d 72, 73 (1992); see also Blank v. Blank, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990) (holding that spousal support must be redetermined if necessary in light of new circumstances).  The material change in circumstances must have occurred after the most recent judicial review of the award, see Hiner v. Hadeed, 15 Va. App. 575, 577, 425 S.E.2d 811, 812 (1993), and "must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay." Hollowell v. Hollowell, 6 Va. App. 417, 419, 369 S.E.2d 451, 452 (1988).  "The 'circumstances' which make 'proper' an increase, reduction or cessation of spousal support under Code § 20-109 are financial and economic ones."  Id. at 419, 369 S.E.2d at 452-53.

On appeal, the trial court's findings must be accorded great deference.  See Bandas v. Bandas, 16 Va. App. 427, 432, 430 S.E.2d 706, 708 (1993).  "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of witnesses."  Wagner Enters.,

6

<u>Inc. v. Brooks</u>, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

"We will not disturb the trial court's decision where it is based on an <u>ore tenus</u> hearing, unless it is 'plainly wrong or without evidence in the record to support it.'" <u>Furr</u>, 13 Va. App. at 481, 413 S.E.2d at 73 (quoting <u>Schoenwetter</u>, 8 Va. App. at 605, 383 S.E.2d at 30).

### III.  PENSION AS INCOME

On appeal, husband posits an alleged internal inconsistency between the language of Code § 20-107.1 and that of Code § 20-107.3(G).[3]  Husband argues that the language of Code

---

[3]Code § 20-107.1 provides in pertinent part:

> [T]he court may make such further decree as it shall deem expedient <u>concerning the maintenance and support</u> of the spouses.
>
> *    *    *    *    *    *    *
>
> The court, in determining whether to award support and maintenance for a spouse, shall consider the circumstances and factors which contributed to the dissolution of the marriage, . . . . If the court determines that an award should be made, it shall, in determining the amount, consider the following:
>
> (1)  The earning capacity, obligations, needs and financial resources of the parties, including but not limited to income <u>from all pension, profit sharing or retirement plans, of whatever nature</u> . . . .

(Emphasis added).  Code § 20-107.3 provides in pertinent part:
> (A) Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce . . . the court, upon request of either party, <u>shall</u> determine the legal title as between the parties, and the ownership and value of <u>all</u>

7

§ 20-107.1 requiring the trial court when setting spousal support to consider all financial resources of a party, including income from "all pension, profit sharing or retirement plans, of whatever nature" conflicts with the language of Code § 20-107.3(G), limiting division of a party's pension to fifty percent of the marital share of cash benefits actually received. Thus, husband contends that the trial court's failure to terminate his spousal support obligation resulted in "double-dipping," because wife already received her maximum marital share of his pension pursuant to the equitable distribution provisions of the parties' agreement.[4]  Under the

> property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital   . . . .

> * * * * * * *

> (G) [U]pon consideration of the factors set forth in subsection E: (1)  The court may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested, which constitutes marital property. . . . However, the court shall only direct that payment be made as such benefits are payable.  No such payment shall exceed fifty percent of the marital share of the cash benefits actually received by the party against whom such award is made.

(Emphasis added).

[4] "Double dipping" is the term used to describe [that which] . . . occurs when property is awarded to a spouse in equitable distribution but is

8

trial court's order, husband would be required to use his pension benefits to pay spousal support because he has no other income. Although conceding that these code sections are "part of one legislative scheme dealing with divorce," he argues that they remain in conflict, and the dollars reflected in his disbursed marital share of pension monies cannot be used to recalculate his spousal support obligation.

## A. THE RELATIONSHIP BETWEEN CODE §§ 20-107.1 AND 20-107.3

"A primary rule of statutory construction is that courts must look first to the language of the statute.  If a statute is clear and unambiguous, a court will give the statute its plain meaning."  Loudoun County Dep't of Social Services v. Etzold, 245 Va. 80, 85, 425 S.E.2d 800, 802 (1993).  "As we do not believe the General Assembly intended to enact irreconcilable provisions in the Act, we construe the provisions in a way that gives full effect to all the statutory language."  Marchand v. Division of Crime Victims' Comp., 230 Va. 460, 463, 339 S.E.2d 175, 177 (1986).

"When the General Assembly uses different terms in the same act, it is presumed to mean different things. . . .  'In

---

then also treated as a source of income for purposes of calculating alimony

obligations.  Double dipping disputes usually center on pensions.

7 Equitable Distribution Journal 1 (July 1990).

construing a statute the court should seek to discover the intention of the legislature as ascertained from the act itself when read in the light of other statutes relating to the same subject matter.'" Campbell v. Commonwealth, 13 Va. App. 33, 38, 409 S.E.2d 21, 24 (1991) (quoting Robert Bunts Eng'g & Equip. Co. v. Palmer, 169 Va. 206, 209-10, 192 S.E. 789, 790-91 (1937)) (citation omitted). "[S]tatutes addressing the same subject are to be read in pari materia. In pari materia is the rule of statutory construction that 'statutes which relate to the same subject matter should be read, construed and applied together so that the legislature's intention can be gathered from the whole of the enactments.'" Alger v. Commonwealth, 19 Va. App. 252, 256, 450 S.E.2d 765, 767 (1994) (quoting Black's Law Dictionary 791 (6th ed. 1990)). "Under the rule of statutory construction of statutes in pari materia, statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected homogeneous system, or a single and complete statutory arrangement." Lillard v. Fairfax County Airport Auth., 208 Va. 8, 13, 155 S.E.2d 338, 342 (1967).

While Code § 20-107.3(G) precludes the non-employee spouse from receiving in the equitable distribution proceeding an amount exceeding "fifty percent of the marital share of cash benefits actually received by the party against whom such award is made," Code § 20-107.1(1) expressly requires that when setting spousal support, the trial court shall consider a party's financial

10

resources, including income from "all pension, profit sharing or retirement plans, of whatever nature." (Emphasis added). Each of these sections concerns decidedly different aspects of the resolution of marital rights. The one-time equitable distribution of property completed by Code § 20-107.3 is based on the accrued rights of the parties in the distributed property. This is a separate consideration from that necessary to measure the current financial positions of the parties in determining spousal support under Code § 20-107.1. Different statutory considerations are mandated for each.[5]

Code § 20-107.1(1) evinces the General Assembly's clear intent for income from "all pension[s]" to be included in a trial court's calculation of spousal support. (Emphasis added). Although Code § 20-107.3(G) limits the award a spouse can receive pursuant to the equitable distribution of marital property, no language precludes that property from being considered at a later time as income for purposes of calculation of spousal support. The General Assembly could have specifically directed, as did the New Jersey legislature, that a trial court could not consider the pension share awarded in the equitable distribution proceeding in determining spousal support.[6] It did not do so. To the

[5]The spousal support award, unlike the equitable distribution award, is subject to modification as circumstances change. The equitable distribution award, once made, is final and is not dependent on future events.

[6]See N.J.S.A. 2A:34-23, which provides in significant part that "[w]hen a share of a retirement benefit is treated as an asset for purposes of equitable distribution, the court shall not consider

11

contrary, the plain language of the statute mandates consideration of "all pension[s], profit sharing or retirement plans" in the trial court's determination of spousal support.

Other states have emphasized the distinction between spousal support and equitable distribution. See, e.g., Krafick v. Krafick, 663 A.2d 365, 373 (Conn. 1995) (where the Supreme Court of Connecticut stated that "[a]n award of property is final; the party who receives property pursuant to § 46b-81 owns it in his or her own right and controls it. Periodic alimony, on the other hand, is conditional, subject to modification or elimination"). In Riley v. Riley, 571 A.2d 1261, 1264 (Md. 1990), the Court of Special Appeals of Maryland held:

> Although there is an interrelationship between the two in the sense that, as to each, the court must consider the one in deciding upon the other, . . . they have quite different purposes and focuses. . . . [A]limony is intended to provide periodic support to a financially dependent spouse following the divorce. . . . [T]he principal focus is really on the future . . . . A monetary award . . . is not intended as support, and it focuses . . . on the present and past. . . . The sole purpose . . . is to assure that the disposition of that property upon the divorce will be equitable in terms of the overall contributions that each party made to the acquisition of the property and

income generated thereafter by that share for purposes of determining alimony." See also Flach v. Flach, 606 A.2d 1153, 1154 (N.J.Super. 1992) ("It is clear that the Legislature, by enacting the 'pension' amendment to N.J.S.A. 2A:34-23, eliminated 'double-dipping' for retirement benefits. . . . [O]n alimony modification application, all previously equitably distributed assets and all assets acquired with, by or through equitably distributed assets, when repaid, are not to be deemed to be income for the purpose of determining alimony.").

to the marriage and its breakup.

Moreover, it is generally recognized that:

> [S]pousal support and equitable distribution of property are two distinct concepts. The nonpensioned spouse is not claiming rights as a co-owner in the distributed property, but is instead simply asserting that the pension should not be ignored when gauging the

13

                    financial position of the two parties for
                    purposes of awarding alimony.

7 Equitable Distribution Journal 1 (July 1990).

        Additionally, in another context dealing with the interplay

between these two code sections, we held that "the appropriate

separation between considerations of spousal support and

considerations of an equitable distribution of marital wealth

prevents a 'double dip' by a spouse who seeks and receives

encumbered marital property under Code § 20-107.3 and also seeks

and receives spousal support under Code § 20-107.1."  Gamble, 14

Va. App. at 577, 421 S.E.2d at 646.  In analyzing the legislative

intent behind these sections, we held that,
                    [W]hile Code § 20-107.1 requires a chancellor
                    to consider the provisions made with regard
                    to marital property under Code § 20-107.3, we
                    view that requirement as a practical means by
                    which the chancellor may fix a proper spousal
                    support award in light of the financial
                    result of the monetary award.  Thus, for
                    example, income producing property conveyed
                    pursuant to Code § 20-107.3 would alter the
                    needs of one party and the ability of the
                    other party to pay spousal support.

Id. at 576-77, 421 S.E.2d at 646 (holding that the chancellor may

not, pursuant to Code § 20-107.1, fix a spousal support award so

that the receiving spouse can satisfy outstanding debts on the

marital property conveyed to that spouse pursuant to Code

§ 20-107.3) (citing Williams v. Williams, 4 Va. App. 19, 24, 354

S.E.2d 64, 66 (1987), and Reid v. Reid, 7 Va. App. 553, 564, 375

S.E.2d 533, 539 (1989)).

        "Studied in the light of its purpose and the intent of the

                                    14

legislature, the meaning of [these code sections] is not so ambiguous as to leave reasonable doubt of its meaning, nor are its words equally capable of more than one construction." <u>Tiller v. Commonwealth</u>, 193 Va. 418, 423-24, 69 S.E.2d 441, 444 (1952). The husband's proposed limited construction of these two statutory provisions "would be contrary to the express language used and the manifest intent of the legislature, [and] would render the statute unreasonable, . . . which cannot be presumed to have been the intent of the legislature." <u>Id.</u> Accordingly, we find that, when considered in the overall legislative scheme for the proper resolution of both property and support issues, Code §§ 20-107.1 and 20-107.3 are compatible and must be read together.

## B. DUAL CONSIDERATION OF PENSION

We have recognized a distinction between equitable distribution awards made pursuant to Code § 20-107.3 and spousal support awards made pursuant to Code § 20-107.1. For example, in <u>Stumbo v. Stumbo</u>, we held as follows:

> A spousal support award under Code § 20-107.1 serves a purpose distinctly different from an equitable distribution award fashioned under Code § 20-107.3. "Spousal support involves a legal duty flowing from one spouse to the other by virtue of the marital relationship. By contrast, a monetary award does not flow from any legal duty, but involves an adjustment of the equities, rights and interests of the parties in marital property." "In determining spousal support, the trial court's consideration must include earning capacity, obligations, needs, the property interests of the parties, and the provisions if any, made with regard to

15

> marital property."  "A review of all the
> factors contained in Code § 20-107.1 is
> mandatory" in making a spousal support award.

Stumbo v. Stumbo, 20 Va. App. 685, 691, 460 S.E.2d 591, 594 (1995) (citations omitted).  While we have not yet determined the precise question of whether pension benefits post equitable distribution may be considered as income in a calculation or recalculation of spousal support,[7] several of our sister states have addressed this issue.

The majority of these jurisdictions do not prohibit dual consideration of the pension award for purposes of equitable distribution and spousal support.  In Riley, a case factually similar to the case at bar, the Maryland Court of Special Appeals decided that husband's pension benefits may properly "be considered as a resource for purposes of determining his ability to pay alimony," even though wife had already been given a share of the pension as part of the monetary award.  Riley, 571 A.2d at 1266.  In that case, the parties were divorced after thirty-two years of marriage.  The decree directed husband to pay alimony, gave wife a monetary award based on marital property, and awarded her an interest in husband's pension.  Husband paid the monetary award to wife.  He later retired and filed a motion to reduce or terminate his alimony obligation.  Husband argued, as in the instant case, that the court erred in considering his pension and

---

[7]See Stubblebine v. Stubblebine, 22 Va. App. 703, 709, 473 S.E.2d 72, 74-75 (1996), where we "express[ed] no opinion on the relationship between Code §§ 20-107.1 and 20-107.3."

16

disability benefits as sources of income for the purpose of determining his ability to pay alimony. He contended that "his pension benefits [could not] properly be considered as a resource for purposes of alimony because [the wife] had already been given a share of the pension as part of the monetary award and [she] therefore ha[d] no claim on the balance of the pension." Id. at 1264. The trial court denied his motion. On appeal, the Maryland Court of Special Appeals held as follows: "[W]e see no reason why [the trial court] cannot base such an award on assets or sources of income that have not been taken from the payor and that do remain available." Id. The court explained:

> [The pension share] he paid to her is no longer a resource of his and was not counted as such. He therefore has been given credit for the monetary award paid to [wife]. The evidence showed that [husband] receives, or is entitled to receive . . . monthly pension benefits. That is his money, and it is therefore, in fact, a resource that he has from which to pay alimony. We see nothing unlawful or unfair in the court's considering it as such.

Id. at 1265.

Similarly, in Pennsylvania, the Court of Common Pleas divorced the parties, distributed the marital property, and awarded alimony to wife. Husband, who was receiving his retirement benefits, argued that he would be "unjustly burdened if the pension is designated as a marital asset subject to equitable distribution and also used to calculate the alimony award" to wife. Braderman v. Braderman, 488 A.2d 613, 620 (Pa.

17

Super. 1985).  The appellate court disagreed.

> This argument ignores the provisions of the Divorce Code providing that in determining the alimony award, the court must consider numerous factors including the sources of income and the property of both parties.  In determining the husband's ability to pay support, the court must consider his earning power and the nature and extent of his property.  Also, in determining whether [wife] lacks sufficient property to provide for her reasonable needs, the court must consider any property distributed to the wife pursuant to the equitable distribution award.

Id.  Accord White v. White, 192 Cal. App. 3d 1022, 1028-29 (1987) (holding that the "income from [the husband's] separate property pension must be considered along with other appropriate factors when gauging his ability to pay just and reasonable spousal support"); Krafick, 663 A.2d at 365 (holding that it is not double dipping to consider vested pension benefits for purposes of equitable distribution and as a source for alimony in a martial dissolution action); Sachs v. Sachs, 659 A.2d 678 (Vt. 1995) ("pensions may be considered as marital assets . . . they may also be considered as a source of income upon which an award of spousal maintenance may be based").

Further, other marital awards or benefits may be considered a source of income in different contexts.  In McGuire, we held that the trial court did not abuse its discretion in fixing a spousal support award when it considered the monthly pension payments the wife was receiving.  See McGuire, 10 Va. App. at 251, 391 S.E.2d at 347.  We stated that "Code § 20-107.1 required the trial judge to consider the income from the federal pension

18

that [wife] . . . was to receive. . . . We believe that the plain language of Code § 20-107.1 requires that monthly federal pension payments be considered as akin to monthly income from an asset and not an exhaustible asset. . . ." Id. at 251-52, 391 S.E.2d at 347 (emphasis added). Moreover,

> [M]ost states have never adopted the rule that a pension cannot be a source for both property division and alimony, and several states have rejected the rule expressly. . . . It is entirely true that a pension cannot be both presently existing property and income earned in the future; it must be one or the other. . . . [A]n award of alimony can be based not only upon the payor's income but also upon his property. Where the payor owns real property, for instance, he may under some circumstances be required to sell it in order to pay alimony to his former spouse . . . . All types of property, including pensions, should be a permissible source for future alimony payments.

See generally Brett R. Turner, Equitable Distribution of Property § 6.11 p. 355 (2d ed. 1995) (footnotes omitted). We find the analysis and the cases cited above equally applicable to the instant case. Thus, we hold that the income received by husband from his share of the distribution of his pension is a fungible asset that may be considered as a resource when determining the amount of his spousal support obligation. By the same token, the wife's share of the pension is a resource of hers which must be considered in determining her need for support.

Additionally, it is noteworthy that the parties included provisions in their Agreement for the reduction and/or elimination of husband's spousal support obligation upon the

19

happening of enumerated events.  Paragraph 3 B. (2) of the

Agreement provides as follows:

> The obligation of the Husband to pay spousal
> support to the Wife shall terminate on the
> first to occur of:  (a) the death of the
> Husband; (b) the death of the Wife; (c)
> remarriage of the Wife; or (d) the Wife
> living with a man to whom she is not married
> for a period in excess of 6 months, as though
> they were husband and wife.

However, the Agreement contains no provision excluding husband's

share of the pension from his income for purposes of

recalculating his spousal support obligation.  Neither does the

Agreement contain any provision excluding husband's pension share

from his income in the event it becomes his only source of

income.

Lastly, we address husband's reliance on the New Jersey

cases of Innes v. Innes, 569 A.2d 770 (N.J. 1990), and D'Oro v.

D'Oro, 454 A.2d 915 (N.J. Super. 1982), which held that a pension

once divided may never be considered again.  These are easily

distinguished from the instant case.  The New Jersey legislature

amended its statute to provide that once a retirement benefit "is

treated as an asset for purposes of equitable distribution, the

court shall not consider income generated thereafter by that

share for purposes of determining alimony."  See also Staver v.

Staver, 526 A.2d 290 (N.J. Super 1987) (holding that, pursuant to

N.J.S.A. 2A:34-23, the portion of husband's pension subject to

equitable distribution cannot be considered income for purposes

of alimony).  The comparable provisions in Virginia, Code

20

§§ 20-107.1(1) and 20-107.3(G), contain no such prohibition. Thus, the New Jersey statutory and case law cited by the husband is inapposite.

Accordingly, we hold that the trial court did not abuse its discretion in failing to terminate husband's spousal support obligation, and that the trial court properly reduced the husband's spousal support obligation from $2,600 to $800 based upon a change in husband's financial circumstances. For the foregoing reasons, the trial court is affirmed.

Affirmed.
