ELDER, J,
with whom FITZPATRICK, C.J., BENTON, ANNUNZIATA and FELTON, JJ., join, dissenting.
A majority of six members of this Court agree to affirm the judgment of the trial court permitting the Department of Social Services (DSS) to recover from Angela Hodges (appellant) payments of Temporary Assistance for Needy Families (TANF). These judges agree that the exemption from repayment set out in paragraph 4 of Code § 63.2-1908 does not apply under the facts of this case. However, they disagree over why the exemption is inapplicable.
The first paragraph of Code § 63.2-1908 provides in relevant part as follows:
Any payment of public assistance money made to or for the benefit of any dependent child or children or their custodial parent creates a debt due and owing to the [State] Department [of Social Services (DSS)] by the person or persons who are responsible for support of such children or custodial parent in an amount equal to the amount of public assistance money so paid.
*140 See Code § 63.2-100 (defining “Department”). The fourth paragraph of Code § 63.2-1908 contains the following proviso:
Debt created by an administrative support order under this section shall not be incurred by nor at any time be collected from a noncustodial parent who is the recipient of public assistance moneys for the benefit of minor dependent children for the period such person or persons are in such status.
Judge Humphreys interprets the exemption as requiring a finding that the person seeking to block repayment “must be both: (1) a non-custodial parent [and] (2) ... receiving public assistance moneys.” He concludes the trial court’s finding that appellant is “not now a noncustodial parent” was unappealed and now compels the conclusion that the exemption does not apply, obviating the need to consider the second requirement for the exemption, that the individual must be “receiving public assistance money.”
In their separate plurality opinion, the remaining five members of the majority conclude appellant was a “noncustodial parent” within the meaning of Code § 63.2-1908. They reject Judge Humphreys’ reasoning and reach the second part of the Code § 63.2-1908 repayment exemption, which requires consideration of the scope of the terms “public assistance” and “public assistance money.”
Like the five-judge plurality, I reject Judge Humphreys’ conclusion that the trial judge’s statement — that appellant is “not now a noncustodial parent” — standing alone, compels the conclusion that the Code § 63.2-1908 repayment exemption does not apply. Like the five-judge plurality, I believe the procedural posture of this case requires us to consider the scope of the terms “public assistance” and “public assistance money” as used in Code § 63.2-1908. However, I disagree with the plurality’s interpretation of the term “public assistance money” as used in Code § 63.2-1908. I would hold the legislature intended the meaning of that term in Code § 63.2-1908 to be coextensive with the term, “public assistance,” as defined in Code § 63.2-100. I believe an examination of these *141 terms as used in Code § 63.2-1908 and related statutes reveals that this interpretation is the only one that yields consistent results. Thus, I respectfully dissent from the majority’s decision to affirm the ruling of the trial court.
I.
“NONCUSTODIAL PARENT” UNDER CODE § 63.2-1908
The trial court found appellant is “not now a noncustodial parent.” However, it permitted DSS to recover the debt from her under Code § 63.2-1908. Assuming we are bound by the trial court’s finding that appellant is “not now a noncustodial parent,” we must interpret that finding in the context of its ruling permitting DSS to recover the debt.
On appeal, a ruling is entitled to a presumption of correctness; a trial court is presumed to have known and properly applied the law, absent clear evidence to the contrary. See Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977); Oliver v. Commonwealth, 35 Va.App. 286, 297, 544 S.E.2d 870, 875 (2001). Applying this principle to the trial court’s ruling permitting DSS to recover the debt from appellant, we are compelled to conclude the court determined that, at the time the debt was incurred, appellant was, in fact, a “noncustodial parent” within the meaning of Code § 63.2-1908, defined in Code § 63.2-1900 merely as an “obligor,” “a responsible person who is or may be obligated under Virginia law for support of a dependent child.” Viewed in this context, we are compelled to conclude the trial court’s finding that appellant is “not now a noncustodial parent” means simply that, at the time of the collection efforts, appellant was a “custodial parent,” defined in Code § 63.2-1900 as, inter alia, “the natural or adoptive parent with whom the child resides.”
Accordingly, I believe the decision of ten members of this Court to consider the scope of the terms “public assistance” and “public assistance money” is proper.
*142 II.
“PUBLIC ASSISTANCE” AND “PUBLIC ASSISTANCE MONEY” UNDER CODE § 63.2-1908
Code § 63.2-100 defines “public assistance” as “Temporary Assistance for Needy Families (TANF); auxiliary grants to the aged, blind and disabled; medical assistance; energy assistance; food stamps; employment services; child care; and general relief.” Code § 63.2-1908 refers not only to “public assistance” but also to “public assistance money” and “public assistance moneys.” Examining the usage of these terms in Code § 63.2-1908, the plurality concludes that “public assistance moneys” include only those types of fungible “public assistance” paid, by cash or check, directly to the person receiving the aid, such as TANF, and not sums paid to third parties on behalf of the person entitled to aid, such as through the food stamp and Medicaid programs. By construing the word “money[s]” so narrowly as to include only direct transfers by cash or check, the plurality disregards the ordinary meaning of the word “money” in the modern world of business and government and fails to give effect to the intent of the legislature.
Here, the obvious intent of the legislature in enacting the part of Code § 63.2-1908 under review was to relieve a noncustodial parent of having to repay a debt created by an administrative support order during such time that the parent “is the recipient of public assistance moneys for the benefit of minor dependent children.” As appellant noted, “the obvious reason for the statutory exception to assessment and collection is to prohibit the Commonwealth from depleting the extremely limited financial resources of families with children as needing and receiving public assistance.” The legislature merely acknowledged the unfairness of collecting from the noncustodial parent, during the time that the parent is receiving “public assistance moneys for the benefit of minor dependent children,” a debt for TANF benefits previously paid. Here, the public assistance moneys being paid for the minor dependent children were food stamps and Medicaid benefits. Public *143 policy does not condone taking “public assistance moneys” paid to a parent for a minor dependent child, during the time the parent is receiving such benefits, to repay other public assistance funds previously paid on behalf of that parent.
The plurality has adopted the most narrow and restrictive meaning of the word “moneys,” in disregard of the everyday, ordinary meaning of the word in the context of the legislature’s intent. Black’s Law Dictionary 1021 (7th ed.1999), defines “money[s]” as “assets that can easily be converted to cash.” Webster’s Unabridged Dictionary 1160 (2d ed.1983), variously defines “money[s]” as “any substance or article used as money, as bank notes, checks, etc.” and as “property, possessions, wealth.” This broader definition of “money[s]” was clearly what the legislature intended by enacting Code § 63.2-1908 and is the only construction that achieves a reasonable and meaningful result, especially when viewed in light of the way the terms “public assistance” and “public assistance money” are used in Code §§ 63.2-1909 and -1910.
Code § 63.2-1910[10] applies to foster care expenditures and creates a debt owed to the local department of social services, similar to the one owed to DSS as provided for in Code § 63.2-1908, for any “payment ... for room, board, and social services for a child in the custody of the local department or [designated] public agency.” Code § 63.2-1910 contains a proviso almost identical to the one in paragraph 4 of Code § 63.2-1908, stating as follows:
Debts created by an administrative support order under this section shall not be incurred by nor at any time collected from a noncustodial parent who is the recipient of public assistance for the benefit of minor dependent children for the period such person is in such status.
*144 (Emphasis added). These portions of the two code sections are identical in key respects except that Code § 63.2-1908 refers to “public assistance moneys ” whereas Code § 63.2-1910 refers only to “public assistance.”
I agree with the general principles of statutory construction set out in the plurality opinion that “[w]hen the General Assembly uses two different terms in the same act, it is presumed to mean two different things,” Forst v. Rockingham Poultry Mktg. Coop., 222 Va. 270, 278, 279 S.E.2d 400, 404 (1981), and that “no part of an act should be treated as meaningless unless absolutely necessary,” Garrison v. First Fed. Sav. & Loan Assoc., 241 Va. 335, 340, 402 S.E.2d 25, 28 (1991). However, settled principles of statutory construction also provide that
Proper construction seeks to harmonize the provisions of a statute both internally and in relation to other statutes. ... [Legislative purpose can best be “ ‘ascertained from [a particular statute] when read in light of other statutes relating to the same subject matter.’ ” Moreno v. Moreno, 24 Va.App. 190, 197, 480 S.E.2d 792, 796 (1997) (citation omitted). The doctrine of pari materia teaches that “ ‘statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected homogenous system, or a simple and complete statutory arrangement.’ ” Id. at 198, 480 S.E.2d at 796 (citation omitted).
DMV v. Wallace, 29 Va.App. 228, 233-34, 511 S.E.2d 423, 425 (1999) (citation omitted) (first emphasis added).
Under the plurality’s interpretation of “public assistance money,” a noncustodial parent receiving food stamps or Medicaid payments but not TANF payments would not be responsible under Code § 63.2-1910, while receiving such benefits, for paying back “[a]ny [foster care] payment made by a local department ... for room, board, and social services”; however, such a parent would, nevertheless, be responsible under Code § 63.2-1908 for paying DSS back for any TANF payments previously received. I would hold that in light of the clear meaning of Code § 63.2-1910, such a construction of *145 Code § 63.2-1908 fails to give proper consideration to the parallel language of Code § 63.2-1910 and would lead to an incongruous result.
Further, in Code § 63.2-1909, the General Assembly used these terms — “public assistance,” “public assistance money,” and “public assistance moneys” — in a seemingly interchangeable fashion. That code section provides as follows:
By accepting public assistance for or on behalf of a child or children, the recipient shall be deemed to have made an assignment to the Department of any and all right, title, and interest in any support obligation and arrearages owed to or for such child or children or custodial parent up to the amount of public assistance money paid for or on behalf of such child or children or custodial parent for such term of time as such public assistance moneys are paid; provided, however, that the Department may thereafter continue to collect any outstanding support obligation or arrearage owed to the Department as a result of such assignment up to the amount of public assistance money paid for or on behalf of such child or children or custodial parent which has not been paid by the noncustodial parent. The recipient shall also be deemed, without the necessity of signing any document, to have appointed the Commissioner as his or her true and lawful attorney-in-fact to act in his or her name, place, and stead to perform the specific act of endorsing any and all drafts, checks, money orders or other negotiable instruments representing support payments which are received on behalf of such child or children or custodial parent as reimbursement for the public assistance moneys previously paid to such recipient.
Applying the plurality’s definition of “public assistance moneys,” Code § 63.2-1909 would permit DSS to seek reimbursement only for TANF benefits and other payments made by cash or check and not for benefits paid to third parties, such as food stamps or Medicaid. Had the General Assembly intended to limit recoupment to the amount of moneys actually paid to the recipient, it would have had no need to mention all “public assistance” in the first portion of Code § 63.2-1909. *146 Thus, the most logical interpretation of Code § 63.2-1909, especially when read in pan materia with Code §§ 63.2-1908 and -1910, is that the General Assembly used interchangeably the terms “public assistance,” which it defined in the code, and “public assistance money” and “moneys,” which it did not separately define.
III.
For these reasons, I respectfully dissent from the majority’s decision to affirm the ruling of the trial court.

. Appellant specifically mentioned Code § 63.2-1910 on brief on appeal. Whether appellant cited this statute in the trial court or on appeal is irrelevant to our ability to consider it in interpreting Code § 63.2-1908. Lash v. County of Henrico, 14 Va.App. 926, 929, 421 S.E.2d 851, 853 (1992) (en banc) (noting that Rule 5A:18 “does not prohibit reliance on statutes or cases not presented to the trial court to support, on appeal, a position otherwise adequately presented at trial”).