**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (3d) 180713-U

Order filed October 24, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit, |
| TOLAN M. PICA, | ) | Knox County, Illinois. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-18-0713 |
| and | ) | Circuit No. 17-D-110 |
| | ) | |
| LADONNA J. PICA, | ) | |
| | ) | Honorable Scott Shipplett, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Justices McDade and O'Brien concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The circuit court did not err by denying petitioner's petition to modify spousal maintenance.

¶ 2    Petitioner, Tolan M. Pica, and respondent, LaDonna J. Pica, were divorced in Fairfax County, Virginia, in 2015. The case was subsequently enrolled in the circuit court of Knox County, where petitioner filed a petition to modify spousal maintenance. The circuit court denied the petition. Petitioner appeals.

¶ 3                              I. BACKGROUND

¶ 4        Petitioner and respondent were married on July 2, 1994, in Abingdon, Illinois. A child of the marriage was born on December 28, 1998. On December 12, 2014, while residents of Virginia, the parties executed a marital settlement agreement (MSA). Section 10(a) of the MSA requires petitioner, for an undefined duration, to pay respondent $2800 per month in spousal maintenance. The spousal maintenance terminates upon (1) respondent's remarriage, (2) respondent's cohabitation in a relationship analogous to marriage for at least one year, (3) respondent's death, or (4) petitioner's death. The MSA states the spousal maintenance is fully modifiable under Virginia law.

¶ 5        Further, section 7(e) of the MSA documents the parties' agreement that respondent is entitled to receive half of petitioner's military retirement pay "if, as, and when such retired pay is due to be paid" to petitioner. The provisions for the award of military retirement pay to respondent were said to be "in compliance with the Uniformed Services Former Spouses Protection Act (the USFSPA)," 10 U.S.C.A § 1408 (West 2014). Under section 7(i) of the MSA, the parties agreed that this entitlement "shall terminate only on the death of [respondent] or the death of [petitioner]." The length of the parties' marriage also entitled respondent to healthcare without premiums, access to military bases, and educational resources from the military.

¶ 6        Prior to the entry of the Virginia court's order of divorce in case No. CL2014-4185 on March 6, 2015, respondent gave notice to petitioner and the Virginia court, by motion, that as of April 1, 2015, she would be residing in Galesburg, Illinois. The Virginia court's order of divorce incorporated the MSA. The parties had been married for over 20 years. At the time of the divorce, petitioner and respondent were 43 and 47 years old, respectively.

¶ 7        In October 2016, after 23 years of military service, petitioner retired from the Marines as a lieutenant colonel. Thereafter, petitioner began drawing his military retirement pay. Petitioner's retirement came earlier than anticipated after he chose to continue his graduate studies, rather than accept a deployment abroad. Eventually, petitioner began working in Washington D.C. for a government subcontractor under the United States Department of Defense. Petitioner's salary from this job, military retirement pay, and disability benefits comprised his income. In the years 2015, 2016, and 2017 petitioner earned $102,615, $128,908, and $170,840, respectively.

¶ 8        On November 30, 2017, petitioner filed a petition to modify spousal maintenance in the circuit court of Knox County.[1] Petitioner sought to reduce the spousal maintenance from the agreed amount of $2800 to $1000. Petitioner also requested that the circuit court impose a date for the termination of spousal maintenance. In support of this relief, petitioner argued: (1) respondent's cost of living in Galesburg, Illinois, is lower than her cost of living in northern Virginia; (2) respondent, as a 50-year-old woman in good health, could but had not obtained full-time employment; (3) respondent's receipt of petitioner's military retirement pay, as a result of petitioner's early retirement, substantially increased her annual income; and, (4) the parties' son would be emancipated after graduating from high school in spring 2018.

¶ 9        A hearing was held on petitioner's petition to modify spousal maintenance on May 31, 2018. Petitioner stated when the MSA was executed respondent was expected to live in northern Virginia. Petitioner said respondent's cost of living was calculated based upon this expectation.

---

[1]On July 25, 2017, petitioner, while still a resident of Virginia, filed a petition to enroll the Virginia order of divorce and the MSA in the circuit court of Knox County under section 511(c) of the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/511(c) (West 2016). An agreed order for enrollment was filed in Knox County on November 6, 2017.

¶ 10        While residing in northern Virginia, respondent rented an 800 square foot apartment for $1350 per month. Respondent testified that when she moved to Galesburg, Illinois, in April 2015, she began renting a single family home for $600 per month. Respondent's rent in Galesburg was subsequently increased to $725 per month.

¶ 11        Respondent was a stay-at-home mother and wife during the course of the 20-year marriage. She had a high school degree. Since the MSA was executed on December 12, 2014, respondent had not sought to further her education or to acquire job training or certifications. At the time of the May 31, 2018, hearing, respondent was unemployed. Respondent testified that she was last employed during the 2016 winter holiday season as a sales clerk at Zales, but this job ended in January 2017, when the mall, where the Zales was located, closed. In addition to spousal maintenance, respondent receives approximately $1783.76 per month from petitioner's military retirement pay. She has no outstanding debt.

¶ 12        On June 1, 2018, the circuit court sent the parties a letter ruling, denying petitioner's petition to modify spousal maintenance. The circuit court found respondent's move to Galesburg, Illinois, was disclosed to petitioner before the Virginia court entered its order of divorce. Further, there was "no reason to think that [the move] would have resulted in any change [to the MSA]." The circuit court recognized that while the parties contemplated the possibility of respondent working in northern Virginia, and that the cost of living may be lower in Galesburg than northern Virginia, it was also true "entry level jobs may pay less in Galesburg." Regardless, the circuit court stated, "[n]one of this was established at trial." "[N]othing *** [respondent] has done, or failed to do, has materially changed in any way from how she conducted her life while married."

¶ 13        The circuit court also reasoned that respondent was not receiving a windfall from petitioner's military retirement pay because that "income is roughly analogous to the amount she

4

might have made in Virginia should she have remained there and sought employment." Additionally, the circuit court was unwilling to find respondent was receiving a windfall simply because she was saving the money provided to her by petitioner. The circuit court was of the opinion that "what people do with their money is their own business," and it was not going to "micro-manage [respondent's] spending/saving habits."

¶ 14 Ultimately, the circuit court found there had been no material change in circumstances surrounding respondent's maintenance award. Further, even if there was a material change in circumstances, the circuit court found they would not have warranted a modification of spousal maintenance, as they would have "accrued in balance to [respondent's] benefit."

¶ 15 On November 1, 2018, a final order was filed consistent with the circuit court's letter ruling, summarized above. Petitioner filed a notice of appeal on November 30, 2018.

¶ 16                                                    II. ANALYSIS

¶ 17 On appeal, the parties agree the sole issue presented for our review is whether the circuit court erred by denying petitioner's petition to modify respondent's spousal maintenance. The parties agree, under the MSA, Virginia law controls the outcome of this appeal. A trial court has broad discretion when deciding this issue. *Driscoll v. Hunter*, 59 Va. App. 22, 35 (2011). Thus, the trial court's findings are afforded "great deference" by courts of review. *Moreno v. Moreno*, 24 Va. App. 190, 195 (1997). Our court does not "retry the facts, reweigh the preponderance of the evidence, or make [our] own determination of the credibility of witnesses." *Id*. We disturb the trial court's ruling only if "plainly wrong or without evidence in the record to support it." *Id*.

¶ 18 Under the MSA, respondent's $2800 monthly spousal maintenance is fully modifiable under Virginia law. However, the Annotated Code of Virginia (the Code) provides:

"[I]f a *** contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse *** shall be entered except in accordance with that *** contract." VA. Code Ann. § 20-109C (West 2016).[2]

Thus, while respondent's spousal maintenance may be modified, those modifications must be made "in accordance with" the MSA. See *id.*

¶ 19    In Virginia, the object of spousal maintenance is to "provide a sum for such period of time as needed to maintain the spouse in the manner to which the spouse was accustomed during the marriage, balanced against the other spouse's ability to pay." *Dailey v. Dailey*, 59 Va. App. 734, 743 (2012). Thus, upon filing a petition for modification of spousal maintenance, it is "settled law" that the movant must prove both (1) a material change in circumstances that (2) warrants a modification of spousal maintenance. *Id.* at 742-743.

¶ 20    When applying this "settled law," the material change in circumstances must have occurred after the most recent judicial review of the maintenance award. *Moreno*, 24 Va. App. at 195. Further, a modification of maintenance is warranted when the established material change in circumstances "bear[s] upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay," as the circumstances warranting modifications are "financial and economic." *Driscoll*, 59 Va. App. at 33; *Moreno*, 24 Va. App. at 195. Indeed, the "crucial question," once a material change in circumstances has been established, is whether the supporting spouse has the ability to pay maintenance. *Driscoll*, 59 Va. App. at 33.

---

[2]The Virginia legislature has since amended § 20-109 of the Code. The amendments took effect on July 1, 2018, which was approximately a month after the circuit court sent its letter ruling to the parties in this case. Therefore, for purposes of this appeal, we apply the Code as written before July 1, 2018.

¶ 21        Further, a petition to modify spousal maintenance can be defeated when a change in circumstances is foreseeable. *Dailey*, 59 Va. App. at 740. What is "reasonably foreseeable" depends upon the circumstances of a particular case. *Id*. at 741. When reviewing a denial of a petition to modify spousal maintenance, our court looks to "objective evidence available at the time of the previous award *** to assess" whether the increase in income "might reasonably have been expected." *Id*. at 741-42. When the parties have reached an agreement for spousal maintenance, that agreement is "highly relevant and perhaps dispositive" in establishing what was reasonably contemplated by parties when the agreement was executed. *Id*. at 741.

¶ 22        Petitioner contends his early retirement from military service was a material change in circumstances because $1800 per month in military retirement pay was "infused" into respondent's budget. In support of his argument, petitioner cites *Dailey*, where the Virginia Court of Appeals found a husband's retirement and subsequent disbursement of retirement pay to his former wife constituted a potential basis for modifying spousal maintenance. See *id*. at 737.

¶ 23        Similar to the case before our court, the husband and wife in *Dailey* entered a property settlement agreement, which provided for spousal maintenance that was modifiable upon material changes in circumstances. *Id*. at 737-38. Like section 10(a) of the MSA, the property settlement agreement in *Dailey* stated maintenance shall continue until (1) the wife's remarriage, (2) the wife's cohabitation with another person in a relationship analogous to marriage for a period of one year, (3) the wife's death, or (4) the husband's death. *Id*. at 737.

¶ 24        Also, the property settlement agreement in *Dailey*, similar to section 7(e) of the MSA in this case, provided that "fifty percent (50%) of the marital share" of the husband's retirement pay shall be received by the wife "if as and when received by the [h]usband." *Id*. at 738. However, unlike section 7(i) of the MSA in this case, which states respondent's right to receive petitioner's

military retirement pay "shall terminate *only* on the death of [respondent] or the death of [petitioner]," the property settlement agreement in *Dailey* did not provide for the termination of the wife's right to receive a share of the husband's retirement pay. *Id*. (Emphasis added.)

¶ 25    After the parties' divorce in *Dailey*, the husband retired and the wife began receiving both spousal maintenance and an equal share of the husband's retirement pay. *Id*. The wife's monthly income increased from $1000 to $3900. *Id*. In support of a request to reduce spousal maintenance under the property settlement agreement, the husband argued his retirement, and the wife's receipt of his retirement pay, was a material change in circumstances. *Id*.

¶ 26    Importantly, the wife in *Dailey* conceded there was a material change in circumstances, but resisted the modification of spousal maintenance since the parties contemplated the husband's retirement when the property settlement agreement was executed. *Id*. The circuit court noted the parties agreed there was a material change in circumstances, but concluded no modification of spousal maintenance was warranted since "paying both spousal [maintenance] and a share of retirement [pay] was exactly what the parties had 'bargained for.' " *Id*.

¶ 27    The Court of Appeals reversed and remanded, holding the trial court erred by finding the property settlement agreement precluded the husband from seeking a modification of spousal maintenance. *Id*. at 740. The Court of Appeals could not conclude the parties contemplated or reasonably foresaw the effect of the husband's retirement on the spousal maintenance obligation. *Id*. at 741. Thus, the wife's foreseeability argument was "unavailing." *Id*.

¶ 28    Despite its similarities, we find *Dailey* to be easily distinguishable. The MSA in this case is not silent about whether respondent's spousal maintenance continued or terminated in the event of petitioner's retirement. See *id*. at 739. Rather, the effect of petitioner's retirement, whenever it occurred, was clearly contemplated by and foreseeable to the parties when the MSA

8

was executed. Thus, petitioner's retirement does not qualify as a material change in circumstances that can now modify respondent's spousal maintenance. See *id.* at 740.

¶ 29    In this case, two separate provisions, sections 10(a) and 7(e), provide for respondent's receipt of spousal maintenance and military retirement pay, respectively. Sections 10(a) and 7(e) also provide distinct circumstances for the termination of petitioner's obligations under those sections. In no way do the circumstances of termination under one section overlap with those contained in the other. Further, as noted by the MSA, respondent's receipt of military retirement pay was provided for and in compliance with the USFSPA. See 10 U.S.C.A § 1408 (West 2014).

¶ 30    Thus, even if petitioner had no plans to retire, we conclude when the parties structured the MSA in 2014, it was within the contemplation of the parties that petitioner's retirement, whenever it occurred, would not affect respondent's $2800 spousal maintenance. For these reasons, the circuit court's finding that petitioner's retirement was not a material change in circumstances warranting a reduction of respondent's spousal maintenance was proper and not "plainly wrong or without evidence in the record to support it." See *Moreno*, 24 Va. App. at 195.

¶ 31    Second, petitioner argues, without citing any legal authority, that disparities in the costs of living indicate respondent's move from northern Virginia to Galesburg, Illinois, was a material change in circumstances that warrants the modification of spousal maintenance. However, the circuit court found petitioner knew of respondent's plan to move to Galesburg, Illinois, before March 6, 2015, when the Virginia court incorporated the MSA into its order of divorce. Indeed, prior to March 6, 2015, respondent notified both the Virginia court and petitioner by written motion that she intended to move to Galesburg, Illinois.

¶ 32    Despite this knowledge, the MSA was incorporated into the Virginia court's order of divorce without an objection to or request for a modification of respondent's spousal

maintenance by petitioner. Even though the alleged change in circumstances occurred after the most recent judicial review of the maintenance award, petitioner's notice of that change renders it an improper basis for seeking a modification of respondent's spousal maintenance. See *Id*.

¶ 33    Further, while the circuit court recognized the cost of living may be lower in Galesburg, Illinois, it expressly found petitioner failed to prove this fact at the hearing on his petition to modify spousal maintenance. Thus, the circuit court's finding that respondent's move was an unproven material change in circumstances that could not warrant a modification of spousal maintenance was not "plainly wrong or without evidence in the record to support it." *Id*.

¶ 34    Next, petitioner makes two arguments supporting his contention that a change in circumstances warranted a modification of respondent's spousal maintenance. First, petitioner, again without citing any legal authority, contends respondent, by virtue of her spousal maintenance, receipt of military retirement pay, and low cost of living, is receiving a windfall. Petitioner argues respondent enjoys a surplus of income above her living expenses and is unfairly "socking away" over $15,000 per year. Petitioner points out respondent is building her savings while voluntarily unemployed. Second, petitioner argues that, due to her voluntary unemployment, a minimum wage income should be imputed to respondent.

¶ 35    In this regard, petitioner's arguments would only be relevant if he first proved the occurrence of an unforeseeable material change in circumstances. As discussed above, we agree with the circuit court's finding that petitioner did not introduce sufficient evidence to make this showing. Thus, it is unnecessary for our court to consider whether any of petitioner's alleged changes in circumstances warrant a modification of respondent's spousal maintenance.

¶ 36                                III. CONCLUSION

¶ 37    The judgment of the circuit court of Knox County is affirmed.

10

¶ 38       Affirmed.