COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and McCullough
Argued at Salem, Virginia

ROBERT M. DRISCOLL

                                                                    OPINION BY
v.      Record No. 0084-11-3              JUDGE STEPHEN R. McCULLOUGH
                                                                    OCTOBER 25, 2011

PAMELA H. HUNTER


FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
Malfourd W. Trumbo, Judge Designate

John C. Wirth (Victor M. Santos; Jessica L. Robinson; Nelson,
McPherson, Summers & Santos, L.C., on briefs), for appellant.

C. Lynn Lawson (Stephen K. Strosnider; Franklin, Denney, Ward &
Lawson, P.L.C., on brief), for appellee.


        Robert M. Driscoll ("husband") appeals from the trial court's decision denying his motion to

reduce or suspend his spousal support obligation to his ex-wife, Pamela H. Hunter ("wife").  He

challenges the ruling of the court below on a number of grounds, [1] arguing that the court

(i) employed an incorrect standard in evaluating husband's request to cease paying spousal support

under the particular agreements at issue; (ii) erroneously declined to find a material change in

circumstances and erred in comparing the relative assets of the parties; (iii) failed to address the

voluntary unemployment of wife; and (iv) incorrectly considered the possibility that husband may

receive funds from his former medical practice under a buy-sell agreement.  Finding no reversible

error, we affirm the decision of the trial court.

---

        [1] On appeal, husband presents seven assignments of error, some of which are analytically
similar.  To improve the clarity of this opinion, we will address husband's assignments of error
in a different order and, in some cases, we will combine the analysis of several of his
assignments of error.

BACKGROUND

When the husband and wife first separated in 1998, they "agreed temporarily" on July 31, 1998, that husband should provide wife with $2,100 per month in spousal support. The parties memorialized their understanding in a written agreement, which provided that it was "to be without prejudice to either party and their right to seek a request or pursue an adjudication by judicial proceedings of child support and/or spousal support." The July 31, 1998 agreement further specified that "[t]he parties recognize that this agreement is without prejudice to the right of either party to request the amount of child support and/or spousal support to be determined by Court proceedings hereafter." Finally, this agreement noted that it was "without prejudice to the right of either party to have the child support and/or spousal support to be set in judicial proceedings without the necessity of a showing of a change in circumstances."

On February 29, 2000, the parties reached a property settlement agreement. This agreement contained the following clause:

> The parties entered into a *pendente lite* spousal and child support
> agreement dated July 31, 1998, which is attached hereto and
> incorporated herein by reference as Exhibit 1. The agreement shall
> remain in full force and effect until modified by further written
> agreement of the parties, adopted as a Court Order, or adjudication
> by a Court of competent jurisdiction. Wife expressly reserves her
> right to spousal support as prayed for in the pending suit for divorce.

On March 14, 2000, the trial court entered the decree of divorce. The decree "incorporated and made a part of this Final Decree of Divorce" the February 29, 2000 property settlement agreement. The $2100 per month spousal support, first awarded as a part of the July 31, 1998 *pendente lite* agreement, ultimately became the monthly support obligation husband paid to wife. The parties divided the marital assets in roughly equal fashion, with husband and wife each retaining about $1.4 million in assets.

In January 2002, after experiencing a number of medical problems, husband retired from his oral surgery practice. Following the substantial reduction in income that followed his retirement, husband's expenses became higher than his income. His monthly expenses amounted to approximately $6,400, whereas his monthly income was approximately $4,100. Husband filed a motion to reduce or suspend his spousal support obligation, noting that his health and continued inability to work constituted a "material change in the circumstances of the parties."

The evidence at the hearing on this motion established that husband owned an IRA worth approximately $1.376 million. At the time of the hearing, he had not drawn down this IRA and was instead relying on his savings account to pay for his obligations, including spousal support. The evidence further showed that husband's assets included, in addition to the IRA, investment accounts and stocks worth approximately $1.164 million and additional checking, savings and money market accounts with a value estimated at $230,000. His home was insured for $800,000, with no outstanding mortgages on the house. Although husband did not have the home appraised, he doubted it was worth $800,000. Husband also received income from social security.

Husband explained that, although he may receive a payment for his interest in the surgery practice pursuant to a buy-sell agreement, it was unclear whether he would receive any payment at all, and if he did receive such a payment, what the amount might be. He had negotiated a settlement of $210,000, but that figure was contingent on the practice acquiring another partner. Finally, he held an ownership interest in the building where he had established his practice, but the value of the building, which was subject to a mortgage, was unclear.

The evidence further showed that wife had worked for a law firm for a period of several months in 2005 and 2006, but voluntarily quit that job and had not sought to obtain other employment. She explained that she was dissatisfied with the stress and compensation associated with this job, as well as the required commute.

At the hearing, the trial court raised the issue of the standard it should employ in determining whether husband should be required to continue his support obligation. Initially, the trial court read the incorporation by reference of the July 31, 1998 *pendente lite* agreement into the property settlement agreement as requiring a *de novo* hearing based on the factors set forth in Code § 20-107.1(E). Ultimately, however, the trial court held in its memorandum opinion that husband was required to show a material change in circumstances that affected his ability to pay the spousal support obligation.

The trial court examined the income and assets of the parties, including the buy-sell agreement, and husband's roughly $3.5 million in assets, and held that "at the present time [husband] has not carried his burden of proving that his decision not to earn wages or salary at this time has significantly affected his ability to afford $2,100 per month in spousal support."

ANALYSIS

I. WHETHER THE PARTIES' AGREEMENTS OBVIATED THE NEED TO SHOW A MATERIAL CHANGE IN CIRCUMSTANCES[2]

The first issue we must decide is whether the trial court erred in requiring husband to show a material change in circumstances, as required by Code § 20-109, in light of the July 31, 1998 agreement and its later incorporation by reference. Husband asserts that the trial court "improperly imposed upon [him] the burden of proving a material change in circumstances" and, in so doing, the trial court erred in failing to consider all the factors required by the statute.

Ordinarily, under Code § 20-109(B), a spouse seeking the reduction in his support obligation must show "a material change in the circumstances of the parties, not reasonably in the

---

[2] The analysis under this section addresses husband's first and second assignments of error. In his first assignment of error, husband argued that the trial court erred by "impos[ing] upon [husband] the burden of proving a material change in circumstances and that such material change warranted a modification of the support order and obligation." In his second assignment of error, husband argued that the "Circuit Court failed to consider and address all of the factors which it was required to consider and address pursuant to [Code § 20-107.1]."

contemplation of the parties when the award was made." Upon such a showing, the trial court must then consider the factors set forth in Code § 20-107.1(E). See Code § 20-109(B). The Code, specifically, Code § 20-109(C), allows parties to modify this default arrangement by agreement. This statute

> "limits the authority of a trial court to make or modify spousal support awards when an agreement exists. 'In such cases, the intent of the parties as expressed in the agreement controls, and the agreement is treated as a contract and construed in the same manner as all contracts.' White v. White, 257 Va. 139, 144, 509 S.E.2d 323, 325 (1999). The statute was enacted to require that decrees for support honor agreements made by the parties; it prevents a court from rewriting the parties' contract."

Doering v. Doering, 54 Va. App. 162, 171-72, 676 S.E.2d 353, 357 (2009) (quoting Smith v. Smith, 41 Va. App. 742, 751, 589 S.E.2d 439, 443 (2003)) (citing Newman v. Newman, 42 Va. App. 557, 568-70, 593 S.E.2d 533, 539-40 (2004); Fleming v. Fleming, 32 Va. App. 822, 826, 531 S.E.2d 38, 40 (2000)).

Husband contends that, when the parties incorporated by reference the July 31, 1998 agreement into the February 29, 2000 agreement, which in turn was incorporated by reference in the divorce decree, the parties reached an agreement to revisit spousal support "without the necessity of a showing of a change in circumstances." Consequently, husband argues, the trial court erred in failing to apply all thirteen factors required for an initial adjudication of support under Code § 20-107.1(E). Wife responds that the trial court correctly discerned the intent of the parties under all of the operative documents to require husband to show a material change in circumstances in order to obtain a modification of spousal support after the entry of the decree of divorce. We agree with wife.

Because the property settlement agreement is a contract, it must be construed as such. Eaton v. Eaton, 215 Va. 824, 826, 213 S.E.2d 789, 791 (1975). It is "the intent of the parties as expressed in the contract [that] controls." Gayler v. Gayler, 20 Va. App. 83, 86, 455 S.E.2d 278, 280 (1995)

(citing Bender-Miller Co. v. Thomwood Farms, Inc., 211 Va. 585, 588, 179 S.E.2d 636, 639 (1971)).  When a contract consists of multiple instruments, we interpret them together to determine the parties' intent.  J.M. Turner & Co. v. Delaney, 211 Va. 168, 171, 176 S.E.2d 422, 425 (1970) (quoting 3 Corbin, Contracts § 549, at 188 (1950)).

Construing all three instruments together leads us to the conclusion that the parties did not intend to permanently displace the requirement of a showing of a material change in circumstances with respect to spousal support.  First, the July 31, 1998 *pendente lite* agreement was by its plain terms meant to be temporary in nature.  Therefore, although this agreement stated that it was "without prejudice to the right of either party to have the . . . spousal support to be set in judicial proceedings without the necessity of a showing of a change in circumstances," the parties made apparent that this agreement was one the parties "agreed temporarily" to follow.

Later, when the parties reached a property settlement agreement on February 29, 2000, they incorporated by reference the agreement of July 31, 1998, which the parties described in 2000 as a "*pendente lite* agreement," but, importantly, the incorporation by reference was limited.  Under the property settlement agreement, the July 31, 1998 agreement was to "remain in full force and effect *until* modified by further written agreement of the parties, *adopted as a Court Order, or adjudication by a Court of competent jurisdiction.  Wife expressly reserves her right to spousal support as prayed for in the pending suit for divorce*."  (Emphasis added).

Finally, the divorce decree "incorporated and made a part of this Final Decree of Divorce" the February 29, 2000 property settlement agreement and established a permanent award of spousal support at $2,100 per month, thus displacing the *pendente lite* award.

Although the serial incorporation by reference of prior agreements is confusing,[3] the gravamen of the parties' intent was a temporary agreement for spousal support in July of 1998.

---

[3] Counsel on appeal did not draft these agreements.

This preliminary arrangement, understandably, did not require a showing of a material change in circumstances. The July 31, 1998 and the February 29, 2000 agreements, construed together, show that the parties contemplated a permanent support award that would displace the temporary arrangement reached in 1998. When the trial court entered the final divorce decree, it supplanted the temporary arrangement contemplated by the July 31, 1998 agreement and, with it, the parties' initial desire to dispense with the need to show a material change in circumstances.[4]

Construing all three instruments together leads us to conclude that the trial court committed no error in requiring husband to show a material change in circumstances under Code § 20-109.

Resolving this question answers the second assignment of error, that the trial court failed to consider all the factors in Code § 20-107.1. That code section lists thirteen factors a trial court must consider "in determining *whether* to award support and maintenance for a spouse." (Emphasis added). Here, the trial court was not making an initial determination of spousal support. Instead, the trial court concluded, first, that the agreements of the parties did not obviate the need to show a material change in circumstances that affected payor spouse's ability to pay and, second, that husband had failed to make such a showing. In light of that conclusion, no further analysis of the thirteen factors under Code § 20-107.1 was required. See Code § 20-109(B) (requiring trial court to examine the thirteen factors under Code § 20-107.1 only after the trial court has made a finding of a material change in circumstances of the parties).

---

[4] We note that husband initially read the agreements in this fashion. In his motion to reopen the question of spousal support, husband argued that a change was justified because there had "been a material change in the circumstances of the parties."

## II. HUSBAND'S ONGOING DUTY TO PAY SPOUSAL SUPPORT FOLLOWING HIS RETIREMENT[5]

The trial court assumed, without deciding, that husband's retirement was a material change in circumstances, but concluded that this change did not affect husband's ability to pay. On this basis, the court denied husband's motion to suspend or reduce his spousal support obligation. Husband assigns error to the trial court's failure to "specifically hold[] that [husband's] retirement was a material change in circumstances which was not contemplated by the parties at the time they entered into their agreements." Wife responds that husband's ability to pay was not affected by his retirement, and, therefore, the trial court committed no error. We again agree with wife.

The initial difficulty with this particular assignment of error is that it captures only a portion of the inquiry a trial court must make. A material change in circumstances, by itself, does not require the alteration of a spousal support award. Instead, the party seeking modification must show, in addition to a material change in circumstances, that the change "'warrants a modification of support.'" Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 794-95 (1997) (quoting Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989)). A modification of support is warranted when it "'bear[s] upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay.'" Id. at 195, 480 S.E.2d at 795 (quoting Hollowell v. Hollowell, 6 Va. App. 417, 419, 369 S.E.2d 451, 452 (1988)). Therefore, even if the trial court had committed error in declining to hold that husband's retirement constituted a material change in circumstances, that alone would not provide a basis for the trial court to alter the spousal support obligation.

Regardless of what the above assignment of error reaches, husband further argues, however, that "the trial court erred in comparing the relative assets of the parties and in denying [husband's]

---

[5] In this section of our analysis, we address husband's third and sixth assignments of error.

request [to] modify or suspend the support obligation, when both parties testified that they were using the principal of their assets to meet their monthly expenses." Husband's premise – that spousal support should be paid exclusively from work-related income – is flawed. No special consideration is given to income from wages or a salary over income from payor's other sources. The crucial question, once a material change in circumstances has been shown, is the "ability of the supporting spouse to pay." Id. Husband's ability to pay was undisputed. The fact that the payor husband may have to draw from other sources, such as the principal of investment or savings accounts, in order to make his spousal support payment does not by itself require the trial court to suspend or reduce his spousal support obligation.

Husband relies on Zipf v. Zipf, 8 Va. App. 387, 382 S.E.2d 263 (1989), to argue that he should not be required to deplete his retirement account to pay spousal support. Zipf is distinguishable on several grounds. First, it dealt with an initial determination of spousal support rather than the existence of a material change in circumstances that affects the payor spouse's ability to pay. Id. at 389-90, 382 S.E.2d at 264-65. Second, the Court in Zipf was addressing whether the spouse who was entitled to spousal support must first deplete her own assets in order to qualify. Id. at 398-99, 382 S.E.2d at 269-70. That case merely stands for the proposition that "*the spouse [who] seeks support,*" i.e., the *payee* spouse, is not required "to exhaust his or her own estate in order to qualify [for support], and reliev[e] the other spouse of all obligation of support until that estate is depleted." Id. (emphasis added). That rationale does not apply to the present case.

Husband also relies on Gamble v. Gamble, 14 Va. App. 558, 421 S.E.2d 635 (1992). In that case, this Court cautioned judges who fashion initial spousal support awards to take into account the division of marital property. "Thus, for example," this Court noted, "income producing property conveyed pursuant to Code § 20-107.3 [the division of property statute] would alter the needs of one party and the ability of the other party to pay spousal support." Id. at 577, 421 S.E.2d at 646.

> In short, the appropriate separation between considerations of spousal support and considerations of an equitable distribution of marital wealth prevents a "double dip" by a spouse who seeks and receives encumbered marital property under Code § 20-107.3 and also seeks and receives spousal support under Code § 20-107.1.

Id. at 577, 421 S.E.2d at 646-47. Gamble sheds no light on the key issue presented in this case, namely, whether a trial court abused its discretion by requiring husband to continue paying spousal support, when husband lost work income due to retirement, but nevertheless readily and admittedly can afford to continue paying spousal support from other sources.

A trial court is vested with "broad discretion in deciding whether a material change in circumstances warrants a modification in the amount of support." Reece v. Reece, 22 Va. App. 368, 373, 470 S.E.2d 148, 151 (1996). Given husband's considerable assets, his level of expenditures, and the relatively modest amount of spousal support, we conclude that the trial court did not abuse the broad discretion with which it is vested in declining to reduce the amount of spousal support or to absolve the husband from having to pay it.

### III.  EFFECT OF WIFE'S VOLUNTARY UNEMPLOYMENT ON THE SPOUSAL SUPPORT OBLIGATION

Husband also assigns as error the trial court's failure to address wife's voluntary unemployment. Wife worked for a law firm for a few months. She voluntarily stopped working there for a variety of reasons, including stress, a long commute, and a low salary. She did not seek any other employment.

We find no error under the posture of this case. Code § 20-107.1(E) requires a trial court to consider thirteen factors when making a spousal support determination. One of those factors is "[t]he earning capacity, including the skills, education and training of the parties and the present employment opportunities for persons possessing such earning capacity." Code § 20-107.1(E)(9). In the present case, the spousal support determination was made by agreement of the parties in the divorce decree that was entered on March 14, 2000.

The issue before the trial court, therefore, was not a determination of spousal support under Code § 20-107.1, but rather whether husband had shown a material change in circumstances that warranted a modification of the amount of support under Code § 20-109.  Under Code § 20-109(B), a court need not consider the thirteen factors found in Code § 20-107.1 if the moving party has not carried its burden of proving a material change in circumstances that merited revisiting the support award.  Having assumed that husband's retirement was a material change in circumstances, and having further found that such a change in circumstances did not affect husband's continuing ability to pay spousal support, the trial court was not required to then consider further wife's voluntary unemployment.

## IV.  TRIAL COURT'S CONSIDERATION OF PROSPECTIVE PAYMENTS FROM THE SALE OF HUSBAND'S INTEREST IN HIS MEDICAL PRACTICE

Husband's final assignment of error is that the trial court erred in considering the possibility that husband may receive money based on the agreement to sell his interest in his medical practice to his partner.  Husband notes that any such payments were uncertain, both as to timing and amount.  The trial court noted that "it is unclear precisely how much Dr. Driscoll will receive from [his buy-sell agreement,] but the evidence suggests he will earn at least an additional $200,000 from that agreement."  Assuming the trial court erred in considering this evidence, we find any such error to be harmless.  Non-constitutional error is harmless "when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached."  Code § 8.01-678.

> "If, when all is said and done, [it is clear] that the error did not influence the [factfinder], or had but slight effect, . . . the judgment should stand . . . .  But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . .  If so, or if one is left in grave doubt, the [judgment] cannot stand."

- 11 -

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

Regardless of whether husband will receive anything from the buy-sell agreement, these potential payments would have no impact on the trial court's ultimate disposition. The key for the trial court was that husband had failed to show that his retirement had significantly affected his ability to pay $2,100 per month in spousal support. Taking the potential $210,000 payment under the buy-sell agreement out of the equation does not alter the outcome. Therefore, assuming error, any error was harmless.[6]

Affirmed.

---

[6] We do not address husband's seventh, and final, assignment of error, which, as he acknowledged at oral argument, constituted a summary of prior assignments of error.