COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Huff, Judges Alston and Russell
Argued at Alexandria, Virginia


SCOTT R. GIAMBATTISTA

                                        MEMORANDUM OPINION* BY
v.        Record No. 1043-17-4            JUDGE ROSSIE D. ALSTON, JR.
                                            MARCH 13, 2018

JULIE A. GIAMBATTISTA


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
J. Martin Bass, Judge Designate

Benton S. Duffett III (Grenadier, Starace, Duffett & Levi, PC, on
briefs), for appellant.

Lawrence D. Diehl (Barnes & Diehl, P.C., on brief), for appellee.


Scott R. Giambattista ("appellant") contends that the Circuit Court of Stafford County

("trial court") erred in denying his motion to reduce spousal support. For the reasons stated

below, we affirm the trial court.

BACKGROUND

Appellant and Julie A. Giambattista ("appellee") were married for nearly 22 years before

separating in February 2010. During the marriage, after the birth of the parties' first child,

appellee ceased pursuing her career at the State Department and became a stay-at-home mother.

She managed the household, dealt with the majority of the children's schoolwork, cooked meals

for the family, sorted and paid the bills, shopped, and cleaned. Appellant did most of the yard

maintenance and coached the children's sports games when not working, also helping out with

the children's homework and house-cleaning.

---

\* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The parties' divorce was later finalized in December 2012, and they entered into a Property Settlement Agreement ("PSA") which contained a section on spousal support. That section provides, in relevant part:

> [Appellant] shall pay to [appellee], as spousal support, the sum of Three Thousand One Hundred Dollars ($3,100.00) per month beginning the first day of the first month following the execution of this Agreement, and payable on the first day of each and every month thereafter . . . *until modified by a court of competent jurisdiction upon appropriate petition filed by either party based upon a material change of circumstances, such as, but not limited to, [appellant's] retirement from the United States Secret Service.*

Appellant worked for the United States Secret Service for more than 30 years. For the majority of his career, he was a member of the Rapid Response team, an entity within the Secret Service posted at the White House and responsible for responding to security threats. As a part of that team, appellant was required to regularly undergo rigorous physical examinations, weapons qualification testing, close-quarter battle certifications, and various other training requirements. He earned roughly $140,000 in 2013 and 2014, and approximately $160,000 in 2015.

In 2014, appellant began experiencing issues maintaining the necessary physical standards to remain on the team, and in November 2015, after again struggling to meet multiple requirements, he was ordered to attend remedial training in March 2016. Appellant comprehended that his struggles would likely be chronic, characterizing himself as a "dinosaur" in comparison with the younger members of the team. Rather than attend the remedial training and attempt re-certification, appellant initiated his retirement in April 2016 and officially left the Secret Service in May 2016. At that point, he was 56 years old. Appellant would have been subject to mandatory retirement at age 57 in April 2017.

Prior to his retirement, appellant engaged in a job search and found employment as a security officer at a high school in Fairfax County. He earns approximately $39,696 per year at

his new position. Appellant also draws income from his retirement benefits, receiving pension payments. Appellant's pension pays almost $4,000 per month, with $2,315.35 being paid to appellant and $1,607.25 to appellee. Appellant also has a balance of about $347,000 in his federal Thrift Savings Plan account ("TSP account").

Appellee is currently employed as a "paraprofessional" at an elementary school in Stafford County, and earns approximately $15,800 per year, but her future earning potential is not significant. Appellee is afflicted with a lifelong eye condition called congenital nystagmus that makes reading difficult and limits her distance vision. She has difficulty looking at a computer screen for extended periods of time. Additionally, it precludes her from driving after dusk and she has a restricted driver's license. Appellee testified that it would be difficult for her to find other employment, stating that due to the limited public transportation options in Stafford County, she would only be able to commute by car during the day.

Additionally, appellee was diagnosed with breast cancer in August 2010. She underwent a mastectomy in September 2010 and had reconstructive surgery in January 2011. In a follow-up mammogram in August 2011, physicians located additional cancerous cells and she underwent chemotherapy. Appellee was prescribed tamoxifen for about four years and finally completed the treatment in late 2015.

Following the divorce, appellant remarried and now lives in a condominium with his new wife, who also works at the Secret Service. She and appellant split their living expenses, but she has also assisted appellant with his spousal support payments. In May, June, and July 2013, she paid spousal support to appellee from her personal account. Additionally, she indicated that she could pay appellant's share of the mortgage should he encounter financial complications, stating "if he doesn't pay the money, then I have to pay."

The parties stipulated at trial that appellant's monthly income is $6,814.50. They further stipulated that appellee's monthly income is approximately $5,704 and her monthly expenses are $4,995, a surplus of over $700. Appellant continued to pay the $3,100 per month to appellee for several months following his retirement but eventually filed the motion to modify spousal support downward. Appellant stated that he had begun depleting his TSP account to pay spousal support and relies on credit cards for other expenses. Appellant argued that the amount should be decreased from $3,100 to approximately $2,300. The trial court heard extensive evidence at a one-day hearing and later issued an opinion letter denying appellant's motion after considering the factors enumerated in Code § 20-107.1(E). This appeal followed.

ANALYSIS

Appellant asserts that the trial court erred in denying his motion to reduce spousal support following his retirement. We disagree.

A. *Standard of Review*

Trial court decisions on the modification of spousal support are reviewed for abuse of discretion. "A trial court is vested with 'broad discretion in deciding whether a material change in circumstances warrants a modification in the amount of support.'" Driscoll v. Hunter, 59 Va. App. 22, 35, 716 S.E.2d 477, 482 (2011) (quoting Reece v. Reece, 22 Va. App. 368, 373, 470 S.E.2d 148, 151 (1996)). Bearing that in mind, "[h]owever, an appellate court should not simply rubber stamp every discretionary decision of a trial court. To the contrary, we have an obligation to review the record and, upon doing so, to reverse the judgment of the trial court if we find a clear abuse of discretion." Walsh v. Bennett, 260 Va. 171, 175, 530 S.E.2d 904, 907 (2000).

This Court reviews "the evidence and all reasonable inferences in the light most favorable to the prevailing party below." Alphin v. Alphin, 15 Va. App. 395, 399, 424 S.E.2d

572, 574 (1992). "Although the decision to award spousal support rests within the trial court's discretion, 'such discretion is not absolute and is subject to review for abuse.'" Moreno v. Moreno, 24 Va. App. 190, 194, 480 S.E.2d 792, 794 (1997) (quoting L.C.S. v. S.A.S., 19 Va. App. 709, 714, 453 S.E.2d 580, 583 (1995)).

## B. *Spousal Support*

Appellant currently pays appellee $3,100 per month in spousal support pursuant to the parties' PSA.

Trial courts consider motions to modify spousal support under the following analysis:

> A material change in circumstances, by itself, does not require the alteration of a spousal support award. Instead, the party seeking modification must show, in addition to a material change in circumstances, that the change "warrants a modification of support." Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 794-95 (1997) (quoting Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989)). A modification of support is warranted when it "bear[s] upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay." Id. at 195, 480 S.E.2d at 795 (quoting Hollowell v. Hollowell, 6 Va. App. 417, 419, 369 S.E.2d 451, 452 (1988)).

Driscoll, 59 Va. App. at 33, 716 S.E.2d at 481-82.

Here, the PSA provides, in relevant part:

> [Appellant] shall pay to [appellee], as spousal support, the sum of Three Thousand One Hundred Dollars ($3,100.00) per month beginning the first day of the first month following the execution of this Agreement, and payable on the first day of each and every month thereafter . . . *until modified by a court of competent jurisdiction upon appropriate petition filed by either party based upon a material change of circumstances, such as, but not limited to, [appellant's] retirement from the United States Secret Service.*

(Emphasis added).

Thus, the parties stipulated that appellant's retirement would constitute a material change in circumstances, and we consider only whether the trial court erred in finding that appellant's retirement did not warrant a reduction in the amount of spousal support. Appellant contends that

- 5 -

his decreased income in conjunction with appellee's receipt of a portion of his retirement benefits merits a reduction in support.

The evidence elicited at trial showed that appellant's income dropped significantly following his retirement from the Secret Service. In the few years prior to his retirement, appellant's yearly income was around $140,000. In 2015, the last full year before appellant retired, his total income was approximately $160,000. His yearly salary at his current position with Fairfax County Public Schools is significantly lower, and although his monthly income has diminished overall, it remains substantial due to his monthly retirement benefits disbursement. Appellant's current overall monthly income exceeds $6,800, of which $2,315.35 comes from his retirement benefits. Appellee receives $1,607.25 per month from appellant's retirement benefits.

Although appellant's income has undoubtedly decreased since the formation of the PSA, this Court does not find error given the trial court's broad discretion in these matters. See Driscoll, 59 Va. App. at 35, 716 S.E.2d at 482. In his brief, appellant conceded that the evidence does not merit termination of spousal support, nor even a *significant* reduction. Instead, appellant asserts that a reduction of $800 per month is appropriate. With appellee's monthly expenses at approximately $4,995, appellant reasons that the reduction is warranted because it would essentially equalize appellee's monthly income and monthly expenses.

Contrary to appellant's contentions, this Court has previously rejected the notion that a payee-spouse is only entitled to receive an amount of support that results in an equalization of income and expenses.

In Robinson v. Robinson, 54 Va. App. 87, 95-96, 675 S.E.2d 873, 877-78 (2009), the Court held that a trial court did not err by awarding a spouse $5,000 per month in spousal support, creating a monthly surplus of more than $1,100. The Court held that nothing prohibits an award from exceeding the expenses needed if the evidence and statutory factors support it. Id.

at 97, 675 S.E.2d at 878.  In so holding, the Court recognized and rejected the "erroneous contention that . . . a sum sufficient for allowing [a spouse] to maintain her standard of living enjoyed during the marriage constitute[s] a cap or limit on the amount of spousal support the trial court could award."  Id. at 95-96, 675 S.E.2d at 877.  Such an argument patently disregards the thirteen factors listed in Code § 20-107.1(E) that trial courts are bound to consider.  Id. at 96, 675 S.E.2d at 877.  The trial court had considered factors such as the wife's contributions to the family as the primary child-rearer, her management of the household, and her lack of significant employment prospects when it rendered the $5,000 award.  Id. at 96-97, 675 S.E.2d at 878.

Miller v. Cox, 44 Va. App. 674, 607 S.E.2d 126 (2005), is also instructive.  In Miller, this Court rejected the argument that an award of support in excess of a spouse's stated expenses is a *per se* error of law.  Id. at 681, 607 S.E.2d at 129.  The wife in Miller earned approximately $156,600 per year between her salary, investment returns, and spousal support, and her yearly expenses were approximately $125,000.  Id. at 682-83, 607 S.E.2d at 130.  The trial court based its ruling on the fact that the parties had constantly strived during the marriage to devote a significant chunk of their take-home pay to retirement savings, and the trial court determined that the wife could not be precluded from continuing with that practice post-divorce.  Id. at 686, 607 S.E.2d at 131-32.

Even more recently, in Gordon v. Gordon, No. 2038-16-2, 2017 Va. App. LEXIS 164 (Va. Ct. App. July 11, 2017),[1] this Court again reiterated that trial courts possess the broad discretion to award spousal support amounts that result in a spouse receiving a sum greater than her monthly expenses, so long as the trial court considers the statutory factors.  Id. at *7-10.  The wife in Gordon was the primary child-rearer and "lacked any meaningful employment history or

---

[1] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value."  Otey v. Commonwealth, 61 Va. App. 346, 350 n.3, 735 S.E.2d 255, 257 n.3 (2012); Rule 5A:1(f).

marketable skills." Id. at *10. Even though she was "physically and mentally able" at age 57, the trial court also declined to impute income to the wife despite the expectation that she would begin giving dance lessons. Id. at *11. This Court held that the trial court had appropriately applied the statute and did not err in awarding $12,000 per month in spousal support. Id. at *10-11.

We find that the evidence presented in this case is analogous to Gordon and Robinson. The trial court based its decision on several factors within Code § 20-107.1(E) and made multiple factual findings when considering the statutory factors.

First, appellee was a stay-at-home mother while appellant consistently worked long hours throughout his career. Appellee ceased pursuing her own career and was the primary caregiver to the parties' children, managing the day-to-day events in the household almost entirely by herself. As a result, appellee does not have significant employment prospects and any future efforts to obtain a higher income will be hampered by her vision issues, in that she can only drive between certain hours of the day and cannot view computer screens for extended periods.

Next, as we noted above, appellant is remarried and shares income and expenses with his new wife. The two purchased a new condominium for $651,000, and appellant paid approximately $91,000 toward the down payment. Appellant pays approximately $1,400 per month toward the mortgage. The evidence did not establish that appellant has encountered any obstacles paying spousal support, only that he has had to rely on other means of payment on occasion. See Driscoll, 59 Va. App. at 33-34, 716 S.E.2d at 482 (stating that spousal support is not automatically reduced merely because a payor-spouse must "draw from other sources, such as the principal of investment or savings accounts"). In addition to his current salary and his retirement payout, appellant also has a substantial quantity of savings in his TSP account. Moreover, appellant's new wife has already assisted him with making his monthly spousal

support payment, and further testified that if appellant is unable to cover his share of their expenses, she would pick up the slack, stating "if he doesn't pay the money, then I have to pay."

Appellant relies considerably on his lower income to bolster his arguments. His claim is undercut by this Court's decision in Stubblebine v. Stubblebine, 22 Va. App. 703, 473 S.E.2d 72 (1996). In Stubblebine, the Court reiterated the principle that "[a] reduction in income resulting from a voluntary employment decision does not require a corresponding reduction in the payor spouse's support obligations, *even if the decision was reasonable and made in good faith.*" Id. at 708, 473 S.E.2d at 74 (emphasis added) (citing Antonelli v. Antonelli, 242 Va. 152, 156, 409 S.E.2d 117, 119-20 (1991)). Here, appellant argues that his retirement was in good faith and essentially involuntary because he could no longer qualify for his re-certifications. We do not question this position. The testimony showed that he was scheduled for remedial training in March 2016 but never attended, electing instead to retire in April 2016. The Court does not opine that appellant was without good reason to step away from the considerable rigors of his former position, but we must also recognize that the opportunity to continue working in other government service was likely available.

In response to the case law unfavorable to his argument, appellant relies on McGuire v. McGuire, 10 Va. App. 248, 391 S.E.2d 344 (1990), and even asserts that the case directly controls. We disagree. In McGuire, the husband retired from his position at ATF upon turning 50 years old, "the retirement age permitted by federal law for law enforcement officers." Id. at 250, 391 S.E.2d at 346. The wife asserted that the husband had voluntarily pursued a lower-paying position, creating a lack of ability to pay spousal support to her detriment, an action contrary to this Court's directives. Id. (citing Crosby v. Crosby, 182 Va. 461, 466, 29 S.E.2d 241, 243 (1944) (holding that a spouse must "show that his lack of ability to pay is not due to his voluntary act or because of his own neglect"); Payne v. Payne, 5 Va. App. 359, 364,

363 S.E.2d 428, 431 (1987) (stating that "a spouse may [not] purposely choose to pursue a low paying career which operates to the detriment of the other spouse and children")).  The Court held that because the wife would receive a greater monthly sum post-retirement due to her share of the husband's retirement benefits, the evidence did not prove that the wife would suffer any detriment, and thus the "principles set forth in Crosby and Payne [were] inapplicable."  Id. at 251, 391 S.E.2d at 346.  McGuire also held that a trial court, pursuant to Code § 20-107.1, must consider the effect of any retirement benefits distributed to the payee-spouse.  Id. at 251-52, 391 S.E.2d at 347.  However, it did not hold that receipt of such pay *necessarily* mandates a reduction in support, as appellant asserts here.

Finally, appellant relies on a broad declaration in Moreno, 24 Va. App. 190, 480 S.E.2d 792, specifically, "[a] modification of support is warranted when it 'bear[s] upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay.'"  Id. at 195, 480 S.E.2d at 795 (quoting Hollowell v. Hollowell, 6 Va. App. 417, 419, 369 S.E.2d 451, 452 (1988)).  The evidence establishes that appellant is still able to pay $3,100 per month; thus, his only remaining refuge portends to lie in attempting to downplay appellee's financial needs.  By appellant's own calculations, if support remains the same appellee will receive approximately $709.25 more than her stated monthly expenses.  As the Court has already discussed, the trial court's factual findings justify the surplus between appellee's monthly income and monthly expenses.

Accordingly, the Court cannot hold that the trial court abused its discretion in denying appellant's motion to reduce spousal support.

C. *Attorneys' Fees*

With respect to appellee's request for attorneys' fees and costs based on this appeal, the Court finds that appellant's position was not so unreasonable as to warrant such an award, and accordingly, said request is denied.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Upon review of the record, we hold that appellant's arguments presented proper issues for this Court's review that cannot reasonably be deemed arbitrary or frivolous. See Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004) ("[W]e find the litigation addressed appropriate and substantial issues and that [appellee did not] generate[] unnecessary delay or expense in pursuit of [his] interests."). Accordingly, we award no fees.

Affirmed.