COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Humphreys and O'Brien
Argued by videoconference

WILLIAM G. FENDLEY, IV

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1430-20-2                      JUDGE MARY GRACE O'BRIEN
                                                    AUGUST 3, 2021
RACHEL B. FENDLEY


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      Randall G. Johnson, Jr., Judge

            Christopher T. Holinger (Mary T. Morgan; Golightly Mulligan &
            Morgan, PLC, on briefs), for appellant.

            Michael P. Tittermary (Tittermary Law, PLC, on brief), for appellee.


        Rachel B. Fendley ("wife") was granted a divorce from William G. Fendley, IV ("husband")

based on a one-year separation, pursuant to Code § 20-91(A)(9)(a).  Husband contends that the

court erred by denying his motion for a continuance when his fourth lawyer withdrew the morning

of trial.  He also challenges certain factual findings by the court and its rulings regarding equitable

distribution and child support credits.

                                    BACKGROUND

        The parties married in 2005 and had three children.  Husband was employed as a tax

attorney and also maintained a financial interest in a family business.  Wife did not work outside the

home for the majority of the marriage.

        Husband and wife separated briefly in 2013.  After reconciling, they executed a marital and

reconciliation agreement ("the MRA") in May 2013 that included a provision revoking their prior

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

prenuptial agreement. Husband subsequently left his employment with a law firm to work in his family business. Conflicts arose, and husband's father offered to terminate husband's employment with a severance package of nine months' salary. Husband rejected the offer and was fired without severance pay. He began working for another law firm but was terminated in April 2019. According to wife, husband struggled with alcohol and prescription drug abuse.

On March 21, 2019, wife obtained an emergency protective order after husband threatened to "bury" her, "tear [her] body apart," "dance on [her] coffin," and "burn the house down with [her] in it." The emergency protective order was converted to a preliminary protective order and extended twice. Husband was evaluated at a mental health facility, and on April 19, wife filed for divorce. On June 3, the preliminary protective order was dismissed after a hearing on the merits in the juvenile and domestic relations district court.

Husband first changed counsel on June 19, 2019. On July 15, the circuit court entered a *pendente lite* order requiring the parties to deposit all income into a joint BB&T checking account and granting them "equal access" to "make expenditures for necessary family expenses." The order contained a separate provision enjoining the parties from "waste, dissipation, transfer, disposal, sale[,] and/or diminution of any marital and part-marital assets" and specifically requiring them to "preserve [their] marital and separate assets . . . so that they are forthcoming in the division of the marital estate." Trial was set for March 23, 2020.

On January 13, 2020, husband's second lawyer filed a motion to withdraw stating that he was "obligated to withdraw" because "[t]he attorney-client relationship has become untenable." The court granted the motion and, over wife's objection, also granted husband's request to continue a pretrial hearing to February 14. Husband subsequently requested a continuance of the March 23 trial so his new counsel could prepare. However, on March 18, the court *sua sponte* continued the

trial until August 10 due to the judicial emergency resulting from the COVID-19 pandemic. On June 12, husband's third attorney withdrew, and new counsel entered her appearance.

On August 7, 2020, the last business day before trial, husband's fourth attorney filed a motion to withdraw because "[t]he relationship between attorney and client has become untenable to the extent that the attorney must withdraw pursuant to Va. Rule Prof. Conduct 1.16(a)(1)." The morning of trial, August 10, counsel advised the court that continuing to represent husband would "compromise [her] compliance with the ethical rules." The court granted her motion.

Husband then moved for a continuance based on his attorney's withdrawal. The court stated that because of delays caused by the pandemic, the case could not be heard "until next year." The court further noted that husband had "been through four attorneys" and wife, who had witnesses present, "has a right to have this case tried in a timely way and manner."

Husband conceded that the only reason he wanted an attorney was to assist him in settling the case. The court responded,

> [T]his case has been pending for months and months and months[,]
> and there [have] been plenty of opportunities and time for the parties
> to get together and settle it[.] [T]he parties have a right to disagree[,]
> and if they disagree, we come to court and that's why we're here.
> The case is ready to be tried.

The court denied husband's motion, and he proceeded *pro se*.

The evidence established that during the marriage, husband maintained a retirement account with a pre-separation value of approximately $275,000. Pursuant to the MRA, wife was entitled to fifty percent of the account if the parties divorced. On May 20, 2019, before entry of the *pendente lite* order to preserve marital assets, husband withdrew $80,000 from the retirement account. He withdrew another $26,370 on November 26, 2019, after entry of the *pendente lite* order. Husband introduced evidence attempting to show that he used the funds to pay the family's living expenses while the divorce was pending. Wife disputed husband's evidence; she asserted that the

- 3 -

withdrawals were without her knowledge and consent. She asked the court to value the retirement account as of May 20, 2019, before husband's first withdrawal.

The court found that although some money was used toward the family's expenses and debts, "neither party presented conclusive evidence accounting for all the funds." It held that because husband's $80,000 withdrawal occurred before the *pendente lite* order, wife was required to show husband used the funds for nonmarital expenses, and she did not do so.

However, the court ruled that because husband withdrew $26,370 on November 26, 2019, after entry of the *pendente lite* order, he had the burden to show that those funds were used in compliance with the order, and he was unable to do so. Accordingly, the court valued the retirement account as of November 26, 2019, immediately before husband's second withdrawal.

The parties disputed liability for overdue state and federal taxes. Husband contended that wife was responsible for the tax debt because she managed the family's finances when the estimated taxes were not paid. The court classified the debt as marital, and in distributing it the court referred to "the acts of [h]usband contributing to the dissolution of the marriage" and "the ability of the [p]arties to pay the debt." The court distributed the entire debt to husband.

The court awarded wife guideline child support, retroactive to the date she filed for support, and ordered that husband was entitled to a credit for "any and all payments made since this date." The final decree of divorce credited husband with $8,940 and reduced his arrears accordingly.

After the court issued a letter opinion, husband filed objections and a motion for rehearing. He argued in part that, without counsel, he was unable to present evidence adequately, and as a result, the court made certain erroneous factual findings. The court denied the motion, ruling that the purported factual errors were not material and thus would not change the outcome of the case. The court entered a final decree of divorce, and this appeal followed.

ANALYSIS

A. Denial of Continuance Motion

Husband contends that the court erred by "denying [his] [m]otion for a [c]ontinuance after allowing trial counsel to withdraw on the morning of trial." We reverse a court's decision denying a continuance request "only upon a showing of abuse of discretion *and* resulting prejudice to the movant." Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34 (2007). See also Shah v. Shah, 70 Va. App. 588, 593-95 (2019).

Husband argues that the court abused its discretion by improperly focusing on the number of attorneys he retained rather than assessing his responsibility for other trial delays. He next argues that the court's abuse of discretion prejudiced him because, without counsel, he could not effectively articulate legal arguments, cross-examine witnesses, or introduce evidence.

The court considered several factors while ruling on husband's continuance motion, including the history of the case. Husband received a continuance of a pretrial hearing when his second attorney withdrew for ethical reasons in January 2020. Although the next continuance to August 2020 was precipitated by the COVID-19 judicial emergency, at that time husband had a pending motion to continue the trial so his third lawyer could prepare. On the date of trial, husband's fourth attorney withdrew because the attorney-client relationship had "become untenable," and husband again moved for a continuance. Based on this pattern of attorney withdrawals and requests for continuances, the court could reasonably infer that husband's ability to cooperate with new counsel and proceed to trial was unlikely. Further, in observing that the case could not be heard until the next year if continued, the court "recognized its role in ensuring the prompt disposition of the case." See Shah, 70 Va. App. at 594. The court's denial of husband's motion was "well within its inherent authority to efficiently administer the cases on its docket." See id.

Husband relies on <u>Mills v. Mills</u>, 232 Va. 94 (1986), in which the trial court abused its discretion by denying a continuance when the moving party's counsel withdrew on the morning of trial. However, husband's reliance is misplaced. In <u>Mills</u>, "[n]othing in the record" suggested that the party's "purpose in requesting a continuance was to delay or evade her trial." <u>Id.</u> at 96. Here, by contrast, husband had a history of untenable relationships with attorneys, had previously requested continuances, and conceded that he only wanted new counsel to pursue settlement negotiations. Based on these circumstances, the court could fairly conclude that husband sought to "delay or evade [his] trial." <u>See</u> <u>id.</u>

Also, unlike in <u>Mills</u> where the wife was prejudiced by having to litigate "a complex matter without the assistance of counsel," <u>see</u> <u>id.</u>, husband is himself a lawyer and thus not unfamiliar with applicable legal standards. In fact, the record reflects that he cogently presented evidence and prevailed on certain significant issues.

Because husband failed to show an abuse of discretion or resulting prejudice, we affirm the court's denial of his continuance motion.

### B. Factual Findings

Husband identifies three factual errors in the court's letter opinion that he claims affected the outcome of the case. He contends that the court erroneously found that the preliminary protective order was dissolved by agreement, that he admitted himself into a psychiatric facility, and that the parties reached an agreement concerning *pendente lite* support. He raised each issue in his motion for rehearing, which the court denied.

"[W]hen a court hears evidence at an *ore tenus* hearing, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it[.]" <u>Wright v. Wright</u>, 61 Va. App. 432, 466-67 (2013) (quoting <u>Goodhand v. Kildoo</u>, 37 Va. App. 591, 599 (2002)). Even if error does occur, "[n]on-constitutional error is harmless '[w]hen it plainly

- 6 -

appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Driscoll v. Hunter, 59 Va. App. 22, 36 (2011) (quoting Code § 8.01-678).

The record supports husband's contention that the preliminary protective order was dissolved after a hearing, not by agreement as stated in the court's letter opinion. However, the misstatement was immaterial. The court did not consider the disposition of the protective order in making its equitable distribution or support awards. It merely alluded to husband's conduct that resulted in the emergency protective order to establish the date that wife left the residence and thereby determine the date of separation. When the error was brought to the court's attention in husband's motion for rehearing, the court explained that whether the protective order was dismissed by agreement or after a hearing had no effect on its rulings.

Husband's second allegation is that the court incorrectly referred to him being "admitted" to a mental health facility. He contends that he merely visited a mental health facility for an evaluation. However, at trial, husband testified that he "checked himself in to have a diagnosis done," which the court fairly characterized as husband being "admitted" to the facility. More significantly, the particulars of his mental health evaluation did not factor into the court's rulings on equitable distribution and support.

Finally, husband challenges the court's finding that the parties reached a *pendente lite* support agreement at a hearing in February 2020. Husband argues that because no signed order or transcript of the hearing was introduced, the court erred by finding that the parties had an agreement. See Code § 20-155 (providing that an agreement between spouses "is not required to be in writing and is considered to be executed" if it is "recorded and transcribed by a court reporter and affirmed by the parties on the record personally").

In its letter opinion, the court referred to a February 2020 "agreement" that husband would pay *pendente lite* spousal support from his family-business distributions. Although the agreement was unenforceable under Code § 20-155, the court found that it reflected husband's willingness and ability to pay spousal support going forward. However, the court did not order husband to comply with the purported agreement and did not find that husband owed any money because of its terms.

After considering husband's motion for rehearing, the court specifically ruled that even if his contentions were correct, the court would not have altered its rulings. Likewise, based on our review of the record, we conclude that any factual error contained in the court's letter opinion was harmless; husband received a fair trial on the merits and substantial justice was reached. See Driscoll, 59 Va. App. at 36; Code § 8.01-678.

### C. Retirement Account Valuation Date

Husband contends the court erred by using November 26, 2019, rather than the trial date, for valuing his retirement account. He argues that his $26,370 withdrawal on that alternate date should not have been included in determining the account's value.

Code § 20-107.3 addresses equitable distribution of marital property and requires a court to "determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue" unless "for good cause shown, in order to attain the ends of justice, [the court] order[s] that a different valuation date be used." Code § 20-107.3(A). "[W]e review the court's determination of a valuation date for abuse of discretion." Wright, 61 Va. App. at 463 (quoting Thomas v. Thomas, 40 Va. App. 639, 647 (2003)).

Husband's $26,370 withdrawal occurred after entry of the *pendente lite* order that specifically directed the parties to preserve marital assets. Husband argues the court ignored his evidence that he used this money for legitimate marital expenses. However, the *pendente lite* order was an absolute bar to husband withdrawing money from any retirement account; no exception was

provided for payment of "legitimate marital expenses." Rather, marital expenses were to be paid from the BB&T checking account into which the parties were directed to deposit their respective incomes. Because husband withdrew $26,370 in violation of the *pendente lite* order, the court did not abuse its discretion by using that withdrawal date to calculate the value of the retirement account.

### D. Liability for Tax Debt

Husband contends that the court erred by assigning him sole responsibility for the parties' tax debt. The court classified the parties' tax liabilities as marital but distributed the entire debt to husband. In making this distribution, the court explained that it considered the relevant factors, including "specifically the acts of [h]usband contributing to the dissolution of the marriage . . . [and] the ability of the [p]arties to pay the debt." See Code § 20-107.3(E) (providing factors for determining equitable distribution of marital property).

An equitable distribution award "will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732 (1990). "In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Moran v. Moran, 29 Va. App. 408, 417 (1999) (quoting Klein v. Klein, 11 Va. App. 155, 161 (1990)).

Husband argues that the court should have considered the federal tax code provision that provides for "joint and several" tax liability when a joint return is filed. See I.R.C. § 6013(d)(3). He also contends that because wife was managing the parties' finances when the tax liability accrued, the court erred by not distributing any of that debt to her.

The tax code's reference to "joint and several" liability defines how the IRS may collect taxes from parties who file jointly, not how a court must allocate liability in the context of equitable

distribution. Cf. Decker v. Decker, 17 Va. App. 12, 21-22 (1993) (declining to award a tax refund check to a wife with no income simply "because of the technical form in which the tax estimated vouchers were filed" when all reported income was attributable to the husband). Here, the court was not constrained by the tax code and appropriately considered the relevant factors under Code § 20-107.3(E), including husband's role in the dissolution of the marriage and the parties' relative ability to pay the debt. Wife earned no income during the years that the liability accrued; the court effectively allocated the tax liability in proportion to each party's income for the relevant years.

Because allocating the entire tax liability to husband was neither plainly wrong nor without evidence to support it, the court did not abuse its discretion.

### E. Credit for Child Support Payments

The court's child support ruling included a provision that support was retroactive to April 19, 2019, the date wife filed for support, and husband would receive a "credit [for] any and all payments made since this date." The divorce decree prepared by wife awarded husband a $8,940 credit before establishing arrears.[1]

Husband argues that he did not receive appropriate credit for payments he made to third parties on behalf of the children "not just for their basic needs, but for the activities they enjoy[] . . . like music lessons, sports, and recreational activities." We review the determination of child support credits for an abuse of discretion. See Commonwealth v. Skeens, 18 Va. App. 154, 160 (1994).

Husband concedes that his third-party payments were "non-conforming support payments" not made pursuant to any existing court order. See Gallagher v. Gallagher, 35 Va. App. 470, 476 (2001) (en banc) (quoting Skeens, 18 Va. App. at 158). Normally, payments to third-party vendors

---

[1] At oral argument, wife stated that this dollar amount reflected reimbursement for a withdrawal she made in April 2020 from the parties' joint checking account.

for "items such as 'day care, doctor visits [and] food'" are considered gifts or gratuities and do not entitle a payor to receive credit. Zedan v. Westheim, 60 Va. App. 556, 583 (2012) (alteration in original) (quoting Gallagher, 35 Va. App. at 479 n.1). This Court has articulated two requirements for crediting non-conforming payments: "(1) an agreement by the parties which modifies the terms or method of payment; and (2) no adverse effect on the support award." Id. at 582 (quoting Gallagher, 35 Va. App. at 476).

Husband does not contend, nor does the record reflect, that the parties had a specific agreement for him to make the third-party payments on behalf of his children. Accordingly, the court did not abuse its discretion in declining to award him anything more than the $8,940 that wife credited to him.

### F. Appellate Attorneys' Fees

Wife requests the attorneys' fees and costs she incurred in this appeal. Pursuant to Rule 5A:30, in domestic relations cases where attorneys' fees are recoverable, this Court may award some or all of the fees requested or "remand the issue to the circuit court . . . for a determination thereof." Rule 5A:30(b)(1), (2). Whether to award fees is discretionary. Friedman v. Smith, 68 Va. App. 529, 545-46 (2018). "[T]his Court's decisions regarding attorney's fees and costs are based on its consideration of factors including whether the requesting party prevailed, whether the appeal was frivolous, whether either party generated unnecessary expense or delay in pursuit of its interests, as well as 'all the equities of the case.'" Id. at 546 (quoting Rule 5A:30(b)(3)). See also Rule 5A:30(a) (authorizing taxation of costs against an appellant if a judgment is affirmed).

Here, we find that husband generated unnecessary expenses and delays and the equities of the case warrant awarding wife her appellate attorneys' fees. He retained four different lawyers during the pendency of the divorce, two of whom withdrew due to ethical conflicts. Husband conceded that he sought a continuance to pursue settlement rather than try the case, yet the matter

had been pending for over a year without demonstrable progress toward settlement. Further, husband's appeal lacks merit insofar as he challenges factual findings by the court that are either well supported by the record or had no bearing on the outcome in the court below.

Accordingly, we find that wife is entitled to her reasonable appellate attorneys' fees and remand the matter to the circuit court for a determination of that amount. See Rule 5A:30(b)(2); Friedman, 68 Va. App. at 545-46. On remand,

> in determining the reasonableness of such an award the circuit court should consider all relevant factors, including but not limited to, the extent to which the party was a prevailing party on the issues, the nature of the issues involved, the time and labor involved, the financial resources of the parties, and the fee customarily charged in the locality for similar legal services.

Rule 5A:30(b)(4). Costs shall also be taxed against husband. Rule 5A:30(a).

## CONCLUSION

The court did not abuse its discretion in denying husband's motion for a continuance, using an alternate date for valuing his retirement account, apportioning the tax debt, and awarding his child support credit. Further, any factual errors in the letter opinion were harmless because they did not affect the outcome. For these reasons, we affirm the court's decisions. We also award wife her reasonable attorneys' fees and costs incurred on appeal and remand for the limited purpose of determining that amount.

Affirmed and remanded.